# EXHIBIT 1

Electronically Filed
6/22/2018 6:18 PM
Steven D. Grierson
CLERK OF THE COURT

1   JAMES J. PISANELLI, Nevada Bar No. 4027
    JJP@pisanellibice.com
2   TODD L. BICE, Nevada Bar No. 4534
    TLB@pisanellibice.com
3   DEBRA L. SPINELLI, Nevada Bar No.  9695
    DLS@pisanellibice.com
4   PISANELLI BICE PLLC
    400 South 7th Street
5   Las Vegas, NV 89101
    Telephone: 702/214-2100
6   Facsimile:  702/214-2101

7   BRAD D. BRIAN (*pro hac vice* forthcoming)
    Brad.Brian@mto.com
8   MICHAEL R. DOYEN (*pro hac vice* forthcoming)
    Michael.Doyen@mto.com
9   DANIEL B. LEVIN (*pro hac vice* forthcoming)
    Daniel.Levin@mto.com
10  BETHANY W. KRISTOVICH (*pro hac vice* forthcoming)
    Bethany.Kristovich@mto.com
11  MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue
12  Fiftieth Floor
    Los Angeles, California 90071-3426
13  Telephone: (213) 683-9100
    Facsimile: (213) 687-3702

14

15  Attorneys for MANDALAY BAY, LLC,
    MANDALAY RESORT GROUP, MGM
16  RESORTS FESTIVAL GROUNDS, LLC, MGM
    RESORTS VENUE MANAGEMENT, LLC,
17  AND MGM RESORTS INTERNATIONAL

18                    **DISTRICT COURT**

19                **CLARK COUNTY, NEVADA**

20  RACHEL SHEPPARD an Individual, LOTUS          Case No. A-18-769752-C
    HERRERA an Individual and as Special          Dept. No.: XXIV
21  Administrator of the Estate of BRIAN FRASER,
    decedent; STEPHANIE FRASER as the Guardian    **DEFENDANTS MANDALAY BAY,**
22  Ad Litem for AUBREE FRASER, a minor;          **LLC, MANDALAY RESORT GROUP,**
    STEPHANIE FRASER as the Guardian Ad Litem     **MGM RESORTS FESTIVAL**
23  for BRAYDEN FRASER; JOV ANNA                  **GROUNDS, LLC, MGM RESORTS**
    CALZADILLAS an· Individual, FRANCISCO         **VENUE MANAGEMENT, LLC, AND**
24  CALZADILLAS an Individual; and NICHOLAS       **MGM RESORTS INTERNATIONAL'S**
    ROBONE an Individual,                         **NOTICE OF FILING FOR REMOVAL**
25                                                **OF ACTION**

26            Plaintiffs,

27       vs.

28

    ─────────────────────────────────────────────────────

         NOTICE OF FILING FOR REMOVAL OF ACTION – CASE NO. – A-18-769752-C

1 | MANDALAY BAY, LLC, f/k/a MANDALAY
CORP., a Nevada Domestic Limited-Liability
2 | Company;  MANDALAY RESORT GROUP, a
Nevada Corporation; MGM RESORTS
3 | FESTIVAL GROUNDS, LLC, a Nevada
Domestic Limited-Liability Company; MGM
4 | RESORTS VENUE MANAGEMENT, LLC, a
Nevada Domestic Limited-Liability Company;
5 | MGM RESORTS INTERNATIONAL, a
Delaware Corporation; DOES/ROES 1 through
6 | 100
            Defendants.

7

8 **TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

9       PLEASE TAKE NOTICE that Defendants Mandalay Bay, LLC, Mandalay Resort Group,

10 MGM Resorts Festival Grounds, LLC, MGM Resorts Venue Management, LLC, and

11 MGM Resorts International have filed with the Clerk of the United States District Court for the

12 District of Nevada their Notice of Removal, a copy of which is attached hereto as **Exhibit A**, and

13 supporting documents, and that this action is removed to the United States District Court as of

14 June 22, 2018.  By virtue of this removal, no further proceedings before this Court are permitted.

15 (*See* 28 U.S.C. § 1446(d).)

16 DATED:  June 22, 2018          PISANELLI BICE PLLC

17          By:    /s/ James J. Pisanelli
18             James J. Pisanelli, Esq., #4027
            Todd L. Bice, Esq., #4534
19             Debra L. Spinelli, Esq., #9695
            400 South 7th Street, Suite 300
20             Las Vegas, Nevada  89101

21             BRAD D. BRIAN (*pro hac vice* forthcoming)
22             MICHAEL R. DOYEN (*pro hac vice* forthcoming)
            DANIEL B. LEVIN (*pro hac vice* forthcoming)
23             BETHANY W. KRISTOVICH (*pro hac vice* forthcoming)
            MUNGER, TOLLES & OLSON LLP
24             350 South Grand Avenue
            Fiftieth Floor
25             Los Angeles, California 90071-3426

26             Attorneys for Defendants MGM RESORTS
            INTERNATIONAL, MANDALAY CORP., and MGM
27             RESORTS FESTIVAL GROUNDS LLC

28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 22nd day of June, 2018, I caused to be e-filed/e-served through the Court's website true and correct copies of the above and foregoing **DEFENDANTS' MANDALAY BAY, LLC, MANDALAY RESORT GROUP; MGM RESORTS FESTIVAL GROUNDS, LLC; MGM RESORTS VENUE MANAGEMENT, LLC; AND MGM RESORTS INTERNATIONAL'S NOTICE OF FILING FOR REMOVAL OF ACTION** property addressed to the following:

Mark P. Robinson, Jr.
Daniel S. Robinson
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, CA 92660

Robert T. Eglet
Robert M. Adams
Richard K. Hy
EGLET PRINCE
400 South Seventh Street, Suite 400
Las Vegas, NV 89101

Kevni R. Boyle
Rahul Ravipudi
Gregorio V. Silva
Ellin Mardirosian
PANISH SHEA & BOYLE LLP
8816 Spanish Ridge Avenue
Las Vegas, NV 89148

Patrick McGroder III
GALLAGHER & KENNEDY
2575 East Camelback Road
Phoenix, AZ 85016

James Lee
LEE MURPHY LAW FIRM
440 Louisiana Street, #300
Houston, TX 77002

_____/s/ Kimberly Peets_____
An employee of Pisanelli Bice PLLC

# EXHIBIT A

1  JAMES J. PISANELLI, Nevada Bar No. 4027
   JJP@pisanellibice.com
2  TODD L. BICE, Nevada Bar No. 4534
   TLB@pisanellibice.com
3  DEBRA L. SPINELLI, Nevada Bar No.  9695
   DLS@pisanellibice.com
4  PISANELLI BICE PLLC
   400 South 7th Street
5  Las Vegas, NV 89101
   Telephone: 702/214-2100
6  Facsimile:  702/214-2101

7  BRAD D. BRIAN (*pro hac vice* forthcoming)
   Brad.Brian@mto.com
8  MICHAEL R. DOYEN (*pro hac vice* forthcoming)
   Michael.Doyen@mto.com
9  DANIEL B. LEVIN (*pro hac vice* forthcoming)
   Daniel.Levin@mto.com
10 BETHANY W. KRISTOVICH (*pro hac vice* forthcoming)
   Bethany.Kristovich@mto.com
11 MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue
12 Fiftieth Floor
   Los Angeles, California 90071-3426
13 Telephone: (213) 683-9100
   Facsimile: (213) 687-3702

14

15 Attorneys for Defendants MANDALAY BAY, LLC,
   MANDALAY CORP., MANDALAY RESORT
16 GROUP, MGM RESORTS FESTIVAL GROUNDS,
   LLC, MGM RESORTS VENUE MANAGEMENT,
17 LLC, AND MGM RESORTS INTERNATIONAL

18

19              **UNITED STATES DISTRICT COURT**

20                  **DISTRICT OF NEVADA**

| | |
|---|---|
| 21 RACHEL SHEPPARD an Individual, LOTUS HERRERA an Individual and as Special Administrator of the Estate of BRIAN FRASER, decedent; STEPHANIE FRASER as the Guardian Ad Litem for AUBREE FRASER, a minor; STEPHANIE FRASER as the Guardian Ad Litem for BRAYDEN FRASER; JOVANNA CALZADADILLAS an Individual; FRANCISCO CALZADILLAS an Individual; NICHOLAS ROBONE an Individual; ANTHONY ROBONE an Individual, | Case No. **NOTICE OF REMOVAL BY DEFENDANTS** |
|                Plaintiffs, | |
|                vs. | |

                    NOTICE OF REMOVAL

1  MANDALAY BAY, LLC, f/k/a
   MANDALAY CORP., a Nevada Domestic
2  Limited-Liability Company; MANDALAY
   RESORT GROUP, a Nevada Corporation;
3  MGM RESORTS FESTIVAL GROUNDS,
   LLC, a Nevada Domestic Limited-Liability
4  Company; MGM RESORTS VENUE
   MANAGEMENT, LLC, a Nevada Domestic
5  Limited-Liability Company; MGM RESORTS
   INTERNATIONAL, a Delaware Corporation;
6  DOES/ROES 1 through 100,

7            Defendants.

8

9  **TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

10         PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1441 and 1446, and in

11  accordance with 28 U.S.C. § 1331 and 6 U.S.C. §§ 441-444, all Defendants hereby remove this

12  action from the Eighth Judicial District Court of Clark County, Nevada, Case No. A-18-769752-C,

13  to the United States District Court for the District of Nevada.  Removal is proper on the following

14  grounds:

15                          **TIMELINESS OF REMOVAL**

16         1.     On June 6, 2018, Plaintiffs served a Summons and First Amended Complaint

17  ("FAC") on Defendants.  The FAC alleges causes of action arising out of the mass shooting in

18  Las Vegas on October 1, 2017.  (A prior version of the complaint filed by some of the plaintiffs

19  was never served). True and correct copies of all process, pleadings and orders served on

20  Defendants as of the date of this filing are attached as Exhibit A.

21         2.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).  Defendants

22  discovered the basis for this Court's jurisdiction through their own investigation of Plaintiffs'

23  claims after service of the FAC on June 6, 2018.  *See* attached Declaration of Michael R. Doyen

24  ("Doyen Declaration").  This Notice of Removal is being filed on June 22, 2018, within 30 days of

25  service of the Summons and FAC, and within 30 days of Defendants' discovery of the basis for

26  federal jurisdiction.

27

28

39095903.2
                          -2-

## **GROUNDS FOR REMOVAL**

3.      Removal is proper under 28 U.S.C. § 1441(a) and the Support Anti-Terrorism by Fostering Effective Technologies Act of 2002, 6 U.S.C. §§ 441-444 (also known by the acronym, the "SAFETY Act").  The SAFETY Act provides for exclusive federal jurisdiction over actions arising from acts of mass violence where technologies or services certified by the Department of Homeland Security were employed at the event to prevent or respond to mass violence.  This is such an action.

4.      The SAFETY Act applies to actions arising from any (i) "unlawful" act, (ii) that "causes harm to a person … in the United States," and (iii) that "uses or attempts to use … weapons … designed or intended to cause mass … injury."  6 U.S.C. § 444(2)(B) (defining, for purpose of the SAFETY Act, an "act of terrorism").  The associated regulations set forth the same definition.  48 C.F.R. § 50.201.  The Secretary of Homeland Security must determine whether the statutory and regulatory definitions are met.  *Id.*  Subsequent events demonstrate that the Secretary has made such a determination.[1]

---

[1]  The Secretary and the DHS have made clear that the tragedy in Las Vegas falls within the scope of the SAFETY Act.  *See* Congressional Testimony of Acting Secretary of DHS, Nov. 30, 2017 (noting emphasis of "terrorists and other violent criminals … on attacking soft targets," including "recent tragedies in Nevada," and that the "SAFETY Act Program" "provide critical incentives for the development and deployment of anti-terrorism technologies by providing liability protections for 'qualified anti-terrorism technologies,'" which applies to a number of stadiums nationwide); Department of Homeland Security, *Soft Targets and Crowded Places Security Plan Overview*, May 2018 (noting that "mass shootings" in various places, including at a "concert," aim "to kill and maim unsuspecting individuals" [p. 2] fall within the Department's "primary mission" "to prevent terrorist attacks within the U.S, reduce the vulnerability of the U.S. to terrorism, and minimize the damage and assist in the recovery from terrorist attacks that do occur, including those in ST-CPs [soft-targets-crowded places]," and that the protections of the SAFETY Act have been "approved for open venues such as sports arenas and stadia" [p. 17])]; Congressional Testimony of Secretary of DHS, May 15, 2018 (noting DHS is "seeking to ramp up 'soft target' security efforts," that DHS programs "address threats to soft targets – including schools, entertainment venues,  major events, and public spaces.").  On June 4, 2018, DHS announced that it had "developed a ST-CP Security Enhancement and Coordination Plan," which has not been made public.  The plan addresses "the increased emphasis by terrorists and other extremist actors to leverage less sophisticated methods to inflict harm in public areas … such as parks, … special event venues, and similar facilities."  https://www.dhs.gov/publication/securing-soft-targets-and-crowded-spaces

5.      Paddock's attack on the Route 91 Concert meets these statutory requirements.  The FAC alleges that Stephen Paddock used weapons that were intended to cause mass injury and did in fact cause mass injury.  The FAC refers to the incident as the "Mass Shooting" and "the massacre," FAC ¶ 148, and alleges that it was the "deadliest mass shooting in United States history," FAC ¶ 2, and that Paddock gathered and transported assault weapons and other prohibited items for the purpose of inflicting mass death and injury, FAC ¶ 98.  Paddock allegedly fired "hundreds of rounds at the Route 91 Festival without interruption, killing 58 guests … and injuring hundreds of others."  FAC ¶ 69.

6.      The SAFETY Act provides that the district courts of the United States "shall have original and exclusive jurisdiction" over "all actions for any claim for … personal injury, or death" that arise out of, relate to, or result from such an act "when qualified anti-terrorism technologies have been deployed in defense against or response or recovery from such act and such claims result or may result in loss to the Seller."  6 U.S.C. § 442(a).

7.      Pursuant to the SAFETY Act, the Department of Homeland Security has certified the services provided by Contemporary Services Corporation ("CSC") – the Security Vendor for the Route 91 concert.  The DHS Certification recognizes CSC's security services as appropriate for preventing and responding to acts of mass violence.  6 U.S.C. § 441; *see also* 48 C.F.R. § 50.201.

8.      The protections of the SAFETY Act – including the provision of exclusive federal jurisdiction – apply not only to the certified provider of the DHS Certified services (here, CSC), but also to the provider's customers and other downstream users of the Certified services. 6 C.F.R. § 25.7(d).  The use of such DHS Certified services at the concert gives rise to exclusive federal jurisdiction over this action.

9.      Security for the Route 91 Harvest Festival was provided by CSC.  CSC's "Event Security Services" are Certified by the Department of Homeland Security, pursuant to section 441(a) of the SAFETY Act, as appropriate services for preventing and responding to incidents of mass violence.  *See* Doyen Declaration.

10. CSC's security services Certified by DHS include "Physical Security"; "Access Control"; and "Crowd Management." CSC's Certified Crowd Management Services include:

- "Awareness of venue-specific emergency response protocols and evacuation procedures to include emergency alert and mass-notification systems and sheltering procedures";
- "Pre-event venue / event safety inspections;"
- "Facilitation of crowd movement during ingress, circulation, sheltering in place, emergency evacuation, and egress";
- "Pre-event coordination and multi-agency collaboration with public safety agencies"; and
- "Selection, vetting, and training of employees."

11. CSC was retained as the "Security Vendor" for the Route 91 Harvest Festival, and provided the security personnel for the concert. CSC's responsibilities at the Route 91 Harvest Festival included providing the following DHS Certified services:

- "perimeter security, event access, and festival grounds event security";
- "Staff[ing] inner perimeter and gates";
- "Protect[ing] against unauthorized access";
- "early warning … of perimeter breaches";
- "Secur[ing] internal festival grounds";
- "Patrol[ing] festival floor grounds and assist[ing] patrons with any security related issues";
- pre-event planning for "Security and Safety";
- "Emergency response" and "evacuation," including evacuation for "terrorist threat"; and
- "ensur[ing] that the exit routes and gates remain unobstructed."

12. The FAC alleges that the foregoing security tasks were either not performed or were performed inadequately.

13. The FAC alleges, for example, that Festival security paid too much attention to preventing unauthorized access to the Festival lot, and not enough attention to evacuation; that the Festival lot "lacked a sufficient number of available exits for rapid disbursement of a crowd" because of "closed, blocked off, locked or completely barricaded many exits." FAC ¶ 81. CSC's

control over the perimeter and of perimeter exits are DHS Certified services subject to the protections of the SAFETY Act.

14.     The FAC alleges that Defendants "failed to reasonably hire staff with the requisite experience and/or to properly train them in executing an emergency evacuation plan and responding to a mass casualty event." FAC ¶ 159. It alleges that security staff failed to perform adequately by "not communicating, instructing, directing, assisting and/or guiding concert attendees to designated exits during an emergency," and/or not "[e]xecuting an emergency evacuation plan to allow concert attendees to evacuate the premises." FAC ¶ 147; *see* FAC ¶ 159 (defendants "failed to reasonably hire staff with the requisite experience and/or to properly train them in executing an emergency evacuation plan and responding to a mass casualty event"). CSC's hiring and training of security staff – and its performance in an emergency evacuation – are DHS Certified services subject to the protections of the SAFETY Act.

15.     The FAC alleges that the foregoing alleged security failures caused Plaintiffs' injuries. It alleges that the failure to hire staff with sufficient training or experience "curtailed, stopped and/or prevented concert attendees, including Plaintiffs, from reasonably exiting and/or escaping from the venue (1) once the shooting began; (2) at each interval when the shooter paused to reload or switch weapons; (3) and/or at the end of the massacre." FAC ¶ 148. Plaintiffs allege that such inadequate security performance "caused and/or contributed to the endless injuries and deaths that occurred on 1 October, including Plaintiffs." FAC ¶ 142.

16.     Plaintiffs' allegations establish the predicates for the application of the SAFETY Act: the mass shooting was an unlawful act; it was carried out in the United States; it was carried out with weapons designed and intended to inflict mass injury. In fact, the mass shooting occurred at a venue where DHS Certified services were in use to prevent and respond to unlawful acts of mass violence; and Plaintiffs allege that failures in providing such services caused their injuries. The FAC alleges that Defendants are liable for security at the Festival because Defendants acted together in concert in "organizing, hosting, marketing, securing, and/or otherwise holding the Route 91 Festival." FAC ¶¶ 41, 136.

17.     The SAFETY Act regulations make clear that "would be plaintiffs" cannot "circumvent the statute, [by] bring[ing] claims (arising out of or relating to the performance or non-performance of the Seller's Qualified Anti-Terrorism Technology) against … contractors, subcontractors, suppliers, vendors, and customers of the Seller of the Technology," because "those persons or entities, in turn, would file a third-party action against the Seller" of the DHS Certified services and thus "'may result in loss to the Seller'" within the meaning of the SAFETY Act. Regulations Implementing the Support Anti-Terrorism by Fostering Effective Technologies Act of 2002 (the SAFETY Act), 71 FR 33147-01.  As DHS explains, Congress "balanced the need to provide recovery to plaintiffs against the need to ensure adequate deployment of anti-terrorism technologies by creating a cause of action that provides a certain level of recovery against Sellers, while at the same time protecting others in the supply chain." *Id.*

## THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

18.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 6 U.S.C. § 442(a) because:

(a)     Paddock's conduct was an unlawful act and caused harm to persons in the United States, by use of weapons designed or intended to cause mass injury;

(b)     The shooting occurred at a venue where DHS Certified services were in use to prevent and respond to such acts; and

(c)     Plaintiffs allege that failures in the provision of such services caused their injuries.

19.     The United States District Court for the District of Nevada is the appropriate venue for removal pursuant to 28 U.S.C. § 1441(a) because it embraces the place where Plaintiffs originally filed this case, in Clark County District Court.

20.     Upon filing this Notice of Removal, Defendants will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Superior Court of Clark County pursuant to 28 U.S.C. § 1446(d).

21.     This Notice of Removal is filed subject to and with full reservation of rights.  No admission of fact, law or liability is intended by this Notice of Removal, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, Defendants remove to this Court the above action pending against it in the District Court of Nevada, Clark County.

DATED:  June 22, 2018

MUNGER, TOLLES & OLSON LLP
     BRAD D. BRIAN
     MICHAEL R. DOYEN
     BETHANY W. KRISTOVICH
     DANIEL B. LEVIN

By     _____/s/ Brad D. Brian_____
     BRAD D. BRIAN
     350 South Grand Avenue, Fiftieth Floor
     Los Angeles, California 90071-3426
     Tel. (213) 683-9100

     Attorneys for Defendants MANDALAY BAY, LLC, MANDALAY CORP., MANDALAY RESORT GROUP, MGM RESORTS FESTIVAL GROUNDS, LLC, MGM RESORTS VENUE MANAGEMENT, LLC, AND MGM RESORTS INTERNATIONAL

# EXHIBIT A

Case 2:18-cv-01209-RFB-VCF   Document 1-4   Filed 06/26/18   Page 15 of 40
Case 2:18-cv-01209-RFB-VCF   Electronically Filed 6/6/25   Page 2 of 4
6/6/2018 11:47 AM

1  **SUMM**
2  Mark P. Robinson, Jr.                              Robert T. Eglet
   California Bar No. 54426                            Nevada Bar No. 3402
3  (*Nevada pro hac pending*)                          Robert M. Adams
   Daniel S. Robinson                                 Nevada Bar No. 6551
4  California Bar No. 244245                           **EGLET PRINCE**
5  (*Nevada pro hac pending*)                          400 S. Seventh St., Suite 400
   **ROBINSON CALCAGNIE, INC.**                       Las Vegas, NV  89101
6  19 Corporate Plaza Drive                            (702) 450-5400; Fax: (702) 450-5451
   Newport Beach, CA 92660                             eservice@egletlaw.com
7  (949) 720-1288; Fax (949) 720-1292                  *Attorneys for Plaintiffs Jovanna and Frank*
8  mrobinson@robinsonfirm.com                          *Calzadillas*
   Richard K. Hy
9  Nevada Bar No. 12406                                [Additional Counsel On Signature Page]
   (*Nevada local counsel*)
10
   **EGLET PRINCE**                                    Kevin R. Boyle
11 400 S. Seventh St., Suite 400                       (*Nevada pro hac pending*)
   Las Vegas, NV  89101                                California Bar No. 192718
12 (702) 450-5400; Fax: (702) 450-5451                 Rahul Ravipudi
13 *Attorneys for Plaintiffs Rachel Sheppard;*         Nevada Bar No. 14750
   *Stephanie Fraser; Lotus Herrera as*                Gregorio V. Silva
14 *Special Administrator of the Estate of*            Nevada Bar No. 13583
   *Brian Fraser; Stephanie Fraser, as the*            Ellin Mardirosian
15 *Guardian Ad Litem for Aubree Fraser and*           Nevada Bar No. 14399
16 *Brayden Fraser*                                    **PANISH SHEA & BOYLE LLP**
                                                        8816 Spanish Ridge Avenue
17 [Additional Counsel On Signature Page]              Las Vegas, NV  89148
                                                        (702) 560-5520; Fax: (702) 975-2515
18                                                      boyle@psblaw.com
19                                                      *Attorneys for Plaintiffs Nicholas and*
                                                        *Anthony Robone*
20

21                         **DISTRICT COURT**

22                     **CLARK COUNTY, NEVADA**

23 RACHEL SHEPPARD an Individual, LOTUS          |  CASE NO.: A-18-769752-C
24 HERRERA an Individual and as Special          |  DEPT. NO.: XXIV
   Administrator of the Estate of BRIAN          |
25 FRASER, decedent; STEPHANIE FRASER            |
   as the Guardian Ad Litem for AUBREE           |
26 FRASER, a minor; STEPHANIE FRASER as          |
   the Guardian Ad Litem for BRAYDEN             |                **SUMMONS**
27 FRASER; JOVANNA CALZADILLAS an                |
   Individual, FRANCISCO CALZADILLAS an          |
28 Individual; and NICHOLAS ROBONE an            |
   Individual;                                   |

1               Plaintiffs,

2   vs.

3   MANDALAY      BAY,      LLC,      f/k/a

4   MANDALAY CORP., a Nevada Domestic
Limited-Liability Company; MANDALAY

5   RESORT GROUP, a Nevada Corporation;
MGM RESORTS FESTIVAL GROUNDS,

6   LLC, a Nevada Domestic Limited-Liability
Company;   MGM   RESORTS   VENUE

7   MANAGEMENT, LLC, a Nevada Domestic

8   Limited-Liability Company; MGM RESORTS
INTERNATIONAL, a Delaware Corporation;

9   DOES/ROES 1 through 100

10              Defendants.

11

12                       **<u>SUMMONS</u>**

13

14   **NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU
WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ**

15   **THE INFORMATION BELOW.**

16   **TO THE DEFENDANTS:** A Civil Amended Complaint has been filed by the plaintiff(s) against

17   you for the relief set forth in the Complaint.

18             **MANDALAY BAY, LLC, f/k/a MANDALAY CORP**

19

20        1.     If you intend to defend this lawsuit, within 20 days after this Summons is served on
you exclusive of the date of service, you must do the following:

21

22              a.     File with the Clerk of this Court, whose address is shown below, a formal
                     written response to the Complaint in accordance with the rules of the Court.

23              b.     Serve a copy of your response upon the attorney whose name and address

24                      is shown below.

25        2.     Unless you respond, your default will be entered upon application of the

26   plaintiff(s) and this Court may enter a judgment against you for the relief demanded in the

27   Complaint, which could result in the taking of money or property or other relief requested in the

28   Complaint.

2

3.     If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.     The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators, each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted By:

Robert T. Eglet
Nevada Bar No. 3402
Robert M. Adams
Nevada Bar No. 6551
**EGLET PRINCE**
400 S. Seventh St., Suite 400
Las Vegas, NV 89101
(702) 450-5400; Fax: (702) 450-5451
eservice@egletlaw.com
*Attorneys for Plaintiffs Jovanna and Frank Calzadillas*

Richard K. Hy
Nevada Bar No. 12406
*(Nevada local counsel)*
**EGLET PRINCE**
*Attorneys for Plaintiffs Rachel Sheppard;*
*Stephanie Fraser; Lotus Herrera as*
*Special Administrator of the Estate of*
*Brian Fraser; Stephanie Fraser, as the*
*Guardian Ad Litem for Aubree Fraser and*
*Brayden Fraser*

Kevin R. Boyle
*(Nevada pro hac pending)*
California Bar No. 192718
Rahul Ravipudi
Nevada Bar No. 14750
Gregorio V. Silva

Steven D. Grierson, Clerk of the Court

Stacey Alvarez

DEPUTY CLERK      Date 6/6/2018
Regional Justice Center
200 Lewis Avenue
Las Vegas, Nevada 89155

3

Nevada Bar No. 13583
Ellin Mardirosian
Nevada Bar No. 14399
**PANISH SHEA & BOYLE LLP**
8816 Spanish Ridge Avenue Las Vegas,
NV 89148
(702) 560-5520; Fax: (702) 975-2515
boyle@psblaw.com
*Attorneys for Plaintiffs Nicholas and
Anthony Robone*

4

DISTRICT COURT CIVIL COVER SHEET

A-18-769752-C

.................................... County, Nevada

Department 24

Case No. ....................................
*(Assigned by Clerk's Office)*

## I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| RACHEL SHEPPARD, an Individual | MGM Resorts International; Mandalay Bay, LLC; |
| STEPHANIE FRASER, an Individual and on behalf of BRIAN FRASER | Mandalay Corp., MGM Resort Group; |
| | MGM Resorts Festival Grounds, LLC |

| Attorney (name/address/phone): | Attorney (name/address/phone): |
|---|---|
| Eglet Prince | |
| 400 South 7th Street, Suite 400 | |
| Las Vegas, NV 89101 | |

## II. Nature of Controversy *(please select the one most applicable filing type below)*

### Civil Case Filing Types

| Real Property | | Torts | |
|---|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** | |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Product Liability | |
| ☐ Other Landlord/Tenant | ☑ Premises Liability | ☐ Intentional Misconduct | |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort | |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort | |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort | |
| **Other Real Property** | ☐ Legal | | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | | |
| ☐ Other Real Property | ☐ Other Malpractice | | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside  ☐ Surviving Spouse | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Greater than $300,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ $200,000-$300,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ $100,001-$199,999 | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ $25,001-$100,000 | | |
| ☐ $20,001-$25,000 | | |
| ☐ $2,501-20,000 | | |
| ☐ $2,500 or less | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

February 16, 2018
_____
Date

_____
Signature of initiating party or representative

*See other side for family-related case filings.*

Nevada AOC - Research Statistics Unit
Pursuant to NRS 3.275

Form PA 201
Rev 3.1

Electronically Filed
6/4/2018 3:27 PM
Steven D. Grierson
CLERK OF THE COURT

1  **ACOM**
Mark P. Robinson, Jr.

2  California Bar No. 54426
(*Nevada pro hac pending*)

3  Daniel S. Robinson

4  California Bar No. 244245
(*Nevada pro hac pending*)

5  **ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive

6  Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292

7  mrobinson@robinsonfirm.com

8  Richard K. Hy
Nevada Bar No. 12406

9  (*Nevada local counsel*)

10 **EGLET PRINCE**
400 S. Seventh St., Suite 400

11 Las Vegas, NV 89101
(702) 450-5400; Fax: (702) 450-5451

12 *Attorneys for Plaintiffs Rachel Sheppard;*
*Stephanie Fraser; Lotus Herrera as*

13 *Special Administrator of the Estate of*
*Brian Fraser; Stephanie Fraser, as the*

14 *Guardian Ad Litem for Aubree Fraser and*
*Brayden Fraser*

15

16 [Additional Counsel On Signature Page]

17

18

Robert T. Eglet
Nevada Bar No. 3402
Robert M. Adams
Nevada Bar No. 6551
**EGLET PRINCE**
400 S. Seventh St., Suite 400
Las Vegas, NV 89101
(702) 450-5400; Fax: (702) 450-5451
eservice@egletlaw.com
*Attorneys for Plaintiffs Jovanna and Frank*
*Calzadillas*

[Additional Counsel On Signature Page]

Kevin R. Boyle
(*Nevada pro hac pending*)
California Bar No. 192718
Rahul Ravipudi
Nevada Bar No. 14750
Gregorio V. Silva
Nevada Bar No. 13583
Ellin Mardirosian
Nevada Bar No. 14399
**PANISH SHEA & BOYLE LLP**
8816 Spanish Ridge Avenue
Las Vegas, NV 89148
(702) 560-5520; Fax: (702) 975-2515
boyle@psblaw.com
*Attorneys for Plaintiffs Nicholas and*
*Anthony Robone*

19                          **DISTRICT COURT**

20

21                   **CLARK COUNTY, NEVADA**

22  RACHEL SHEPPARD an Individual,
LOTUS HERRERA an Individual and as

23  Special Administrator of the Estate of BRIAN
FRASER, decedent; STEPHANIE FRASER

24  as the Guardian Ad Litem for AUBREE
FRASER, a minor; STEPHANIE FRASER as

25  the Guardian Ad Litem for BRAYDEN
FRASER; JOVANNA CALZADILLAS an

26  Individual, FRANCISCO CALZADILLAS
an Individual; NICHOLAS ROBONE an

27  Individual; ANTHONY ROBONE an

28  Individual;

CASE NO.: A-18-769752-C
DEPT. NO.: XXIV

**FIRST AMENDED COMPLAINT &**
**DEMAND FOR JURY TRIAL**

Exemption from Arbitration Requested
Wrongful Death

- 1 -

**FIRST AMENDED COMPLAINT**

1

2                        Plaintiffs,

   vs.

3

4 MANDALAY BAY, LLC, f/k/a
MANDALAY CORP., a Nevada Domestic

5 Limited-Liability Company; MANDALAY
RESORT GROUP, a Nevada Corporation;

6 MGM RESORTS FESTIVAL GROUNDS,
LLC, a Nevada Domestic Limited-Liability

7 Company; MGM RESORTS VENUE
MANAGEMENT, LLC, a Nevada Domestic

8 Limited-Liability Company; MGM
RESORTS INTERNATIONAL, a Delaware

9 Corporation; DOES/ROES 1 through 100

10                      Defendants.

11 ### COMPLAINT

12       COME NOW Plaintiffs Rachel Sheppard, Stephanie Fraser, individually and as the

13 Guardian Ad Litem for Aubree Fraser, a minor, and Brayden Fraser, a minor, Lotus Herrera as

14 Special Administrator of the Estate of Brian Fraser, deceased, by and through their attorneys, Mark

15 P. Robinson, Jr., Esq., of the law firm ROBINSON CALCAGNIE, INC., and James Lee, Esq., of

16 the LEE MURPHY LAW FIRM; Jovanna Calzadillas and Francisco Calzadillas by and through

17 their attorneys, Robert T. Eglet, Esq. and Robert M. Adams, Esq., of the law firm EGLET PRINCE

18 and Patrick McGroder III, of the law firm GALLAGHER & KENNEDY; and Plaintiffs Nicholas

19 Robone and Anthony Robone, by and through their attorneys, Kevin R. Boyle, Esq., Rahul

20 Ravipudi, Esq., Gregorio V. Silva, Esq. and Ellin Mardirosian, Esq., of the law firm PANISH

21 SHEA & BOYLE LLP (collectively, "Plaintiffs") bring this action against Defendants Mandalay

22 Bay, LLC f/k/a Mandalay Corp., Mandalay Resort Group, MGM Resorts Festival Grounds, LLC,

23 MGM Resorts Venue Management, LLC, MGM Resorts International, and Does/Roes 1-100

24 (hereinafter collectively, "MGM"), with personal knowledge as to their own actions, and upon

information and belief as to those of others, and respectfully allege the following:

25 ### NATURE OF THE ACTION

26       1.     Columbine. Aurora. Sandy Hook. San Bernardino. Sutherland Springs. Pulse.

27 Mass shootings are now a common occurrence in everyday life. They indiscriminately take place

28                                   - 2 -

### FIRST AMENDED COMPLAINT

at schools, movie theaters, places of worship, work, nightclubs, and concerts.  It is not a matter of "if," but rather "when" the next mass shooting takes place.

2.      This action seeks to redress MGM's inadequate, unreasonable, and egregiously deficient security, which resulted in an MGM VIP Guest ("Shooter") orchestrating the deadliest mass shooting in United States history, causing injuries to Plaintiffs attending an MGM promoted event held on MGM premises ("Mass Shooting").

3.      Specifically, MGM's negligence caused:

  a. Rachel Sheppard to be shot three times by the Shooter—once in the upper chest, once in the torso, and once in the abdomen—causing her to nearly bleed to death and requiring four surgeries;

  b. Brian Fraser to be shot in the chest while trying to escape from the Shooter, ultimately causing his death.  Brian Fraser is survived by his two children, Aubree and Brayden Fraser, and his wife, Stephanie Fraser, who was next to her husband, Brian Fraser, during the shooting, causing her to suffer severe emotional distress, among other injuries;

  c. Jovanna Calzadillas to be shot in the head—as her husband, Francisco Calzadillas, shielded her from the gunfire—causing paralysis and permanent brain damage; and

  d. Nicholas Robone to be shot in the upper chest causing him to cough blood— which his brother Anthony Robone witnessed—requiring surgery and weeks of physical therapy.

4.      For three to six days prior to the Mass Shooting, MGM conveyed certain privileges to the Shooter, including use of a service elevator not intended to be accessible to guests or the public, which the Shooter used, with the assistance of MGM employees, to carry approximately 24 suitcases and/or bags and a large white container carrying at least 23 guns, including 22 assault rifles, to two adjacent suites on the 32nd floor of the Mandalay Bay Resort and Casino Las Vegas located at 3950 South Las Vegas Boulevard, Las Vegas, NV 89119 ("Mandalay Bay").

- 3 -

**FIRST AMENDED COMPLAINT**

5.     Despite having repeated interactions with the Shooter, not a single MGM staff member, manager, or security team member inquired with the Shooter about the nearly 25 bags and containers he brought with him, even though he apparently remained alone his entire stay.

6.     During those three to six days, while the Shooter prepared for the Mass Shooting, MGM failed to exercise due care for the safety of its guests, deliberately ignoring countless signs of suspicion that, if noticed, would have prevented, or significantly thwarted, the Shooter's efforts.

7.     In addition to the suspiciously large number of bags the Shooter had, he carried his guns through hotel passages openly available to Mandalay Bay patrons, and he specifically requested two rooms overlooking the Route 91 Harvest Festival ("Route 91 Festival").  The Shooter procured a second room, using his girlfriend's name, despite being alone his entire stay. He also installed an elaborate surveillance system in the hotel, installing two cameras in the hallway outside of his suites and one in the peep hole on his door.

8.     The Shooter also used power tools to barricade an entrance in the hallway, and he refused to allow anyone to service his room without his supervision.  He also left a "Do Not Disturb" sign on his room for more than 36 hours without investigation by any MGM personnel.

9.     For up to twenty minutes, the Shooter broke out the windows in his rooms and used an arsenal of weapons to reign gun fire on persons in attendance of the Route 91 Festival, a three-day country music festival promoted by and held on MGM premises, which Plaintiffs attended.

10.     During the Mass Shooting, MGM gave no assistance, direction, or information to Plaintiffs, or any of the other 20,000 (approximately) festival goers, about the existence or the location of the Shooter, and how to escape to safety.

11.     Instead, the Route 91 Festival attendees were trapped inside the festival venue, preventing Plaintiffs and thousands of others from escaping the gun fire.  For instance, many of the festival's exits were either closed, blocked off, or completely barricaded by MGM, and the few available exits were not well marked or lit.

12.     Even worse, MGM had immediate, actual knowledge of the location of the Shooter and that hundreds of rounds were being fired from his suite to the Route 91 Festival.  Still, MGM failed to take any action to stop or deter the Shooter, and failed to accurately provide law enforcement with the Shooter's location.

- 4 -

**FIRST AMENDED COMPLAINT**

13.     As a result of MGM wrongful conduct, acts, and omissions, 58 people in attendance perished, including Brian Fraser, and thousands more were injured, including Rachel Sheppard, Stephanie Fraser, Jovanna Calzadillas, Francisco Calzadillas, Nicholas Robone and Anthony Robone.

## PARTIES

**Plaintiff Rachel Sheppard**

14.     Plaintiff Rachel Sheppard is and at all times relevant hereto was a resident of the State of California.

15.     Rachel Sheppard purchased a ticket to the Route 91 Festival, and at all relevant times was a paying customer of MGM.

16.     During her stay in Las Vegas for the Route 91 Festival, Rachel Sheppard was a paying customer of Excalibur Hotel and Casino ("Excalibur"), a hotel owned and operated by MGM.

17.     As a result of MGM's wrongful conduct, acts, and omissions, Rachel Sheppard was shot three times by the Shooter—once in the upper chest, once in the torso, and once in the abdomen—blasting her to the ground, injuring her back, and severing her aorta. She nearly bled to death three times, requiring 40 units of blood, coded twice, and to date has undergone four surgeries, including one where she was opened from her pubic bone to her throat in order for her chest to be sawed open so that her aorta could be repaired.

**Plaintiffs Stephanie Fraser, Brian Fraser, Aubree Fraser, and Brayden Fraser**

18.     Plaintiff Stephanie Fraser brings this case on behalf of her family and individually. Lotus Herrera as Special Administrator of the Estate of Brian Fraser, deceased; Stephanie Fraser, as the Guardian Ad Litem for Aubree Fraser, a minor; and Stephanie Fraser, as the Guardian Ad Litem for Brayden Fraser, a minor, is and at all times relevant hereto was a resident of the State of California.

19.     Brian Fraser, decedent, was at all times hereto a resident of the State of California. Stephanie Fraser, surviving spouse; Aubree Fraser, child; and Brayden Fraser, child, of Brian Fraser are the only heirs to Brian Fraser as defined in N.R.S. 41.085.

- 5 -

**FIRST AMENDED COMPLAINT**

20.     Brian and Stephanie Fraser ("Frasers") purchased tickets to the Route 91 Festival, and at all relevant times were paying customers of MGM.



21.     During their stay in Las Vegas for the Route 91 Festival, the Frasers were paying customers of Mandalay Bay.  The Frasers went to Las Vegas with a large group of family and friends who spent time together at the Mandalay Bay swimming pool and at the casino floor where they discussed the Route 91 Festival with MGM's employees.  During Brian Fraser's stay, MGM provided him with an M-Life players card.



22.     As a result of MGM's wrongful conduct, acts, and omissions, Brian Fraser was shot in the chest by the Shooter, injuries from which he suffered for an appreciable amount of time but which ultimately caused his death.

23.     As a result of MGM's wrongful conduct, acts, and omissions, Stephanie Fraser witnessed her husband, Brian Fraser, be shot, fall to the ground, and be given CPR, causing her severe emotional distress, among other injuries.

- 6 -

**FIRST AMENDED COMPLAINT**

**Plaintiff Jovanna Calzadillas, and Francisco Calzadillas**

24.     Plaintiff Jovanna Calzadillas is and at all relevant times hereto was a resident of the State of Arizona.

25.     Plaintiff Francisco Calzadillas is and at all relevant times hereto was a resident of the State of Arizona.

26.     Jovanna and Francisco Calzadillas ("Calzadillas") purchased tickets to the Route 91 Festival, and at all relevant times were paying customers of Defendants.

27.     During their stay in Las Vegas for the Route 91 Festival, the Calzadillas were paying customers of the Luxor Hotel and Casino, an MGM property, and were members of MGM's M-Life rewards program. Francisco Calzadillas recently returned from military deployment and he was vacationing with his wife in Las Vegas.

28.     As a result of Defendants' wrongful conduct, acts, and omissions, Jovanna Calzadillas was shot in the head by the Shooter, causing paralysis and permanent disability. As a result of Defendants' wrongful conduct, acts, and omissions, Francisco Calzadillas witnessed his wife, Jovanna Calzadillas, be shot, and he carried her lifeless body out of the concert venue causing him severe emotional distress.

**Plaintiff Nicholas Robone and Anthony Robone**

29.     Plaintiff Nicholas Robone is and at all relevant times hereto was a resident of Clark County, Nevada.

30.     Plaintiff Anthony Robone is and at all relevant times hereto was a resident of Clark County, Nevada.

31.     Nicholas Robone and his brother Anthony Robone purchased or received as gifts tickets to the Route 91 Festival, and at all relevant times were paying customers of MGM.

32.     As a result of Defendants' wrongful conduct, acts, and omissions, Nicholas Robone suffered a gunshot wound to his upper chest, the bullet just missing his heart, but bruising his lungs, requiring weeks of physical therapy and medical treatment.

33.     As a result of Defendants' wrongful conduct, acts, and omissions, Anthony Robone witnessed his brother, Nicholas Robone, be shot, and Anthony Robone carried his brother's

**FIRST AMENDED COMPLAINT**

bleeding body out of the concert venue causing him severe emotional distress, among other injuries.

### Defendant Mandalay Bay, LLC f/k/a Mandalay Corp.

34.     At all relevant times, Defendant Mandalay Bay, LLC f/k/a Mandalay Corp. was a Nevada Domestic Limited-Liability Company duly licensed and incorporated under the laws of Nevada, with its principal place of business in Clark County, Nevada, and, as a subsidiary of Defendant MGM Resorts International, is believed to be the owner, operator, lessor, and/or manager of Mandalay Bay.  Mandalay Bay, LLC had its own VIP section inside the Las Vegas Village.

### Defendant Mandalay Resort Group

35.     At all relevant times, Defendant Mandalay Resort Group was a Nevada Domestic Corporation duly licensed and incorporated under the laws of Nevada, with its principal place of business in Clark County, Nevada, and is the managing member of Mandalay Bay, LLC, and, as a subsidiary of Defendant MGM Resorts International, is believed to be the owner, operator, lessor, and/or manager of Mandalay Bay.   In addition, Mandalay Resort Group owns and/or operates multiple hotels under its umbrella including, but not limited to:

    a.   Victoria Partners, dba Monte Carlo Resort and Casino ("Monte Carlo");

    b.   Circus Circus Casinos, Inc., dba Circus Circus Hotel and Casino Las Vegas ("Circus Circus");

    c.   Ramparts, Inc., dba Luxor Hotel and Casino ("Luxor");

    d.   New Castle Corp., dba Excalibur Hotel and Casino ("Excalibur"); and

    e.   Mandalay Bay LLC dba Mandalay Bay Resort and Casino and the Delano f/k/a THEHotel ("Mandalay Bay").

### Defendant MGM Resorts Festival Grounds, LLC

36.     At all relevant times, Defendant MGM Resorts Festival Grounds, LLC, was a domestic limited-liability company duly licensed and incorporated under the laws of Nevada, with its principal place of business in Clark County, Nevada, and is believed to be the owner and/or operator of the Las Vegas Village, the concert venue where the Route 91 Festival occurred in September and October 2017.

- 8 -

### FIRST AMENDED COMPLAINT

**Defendant MGM Resorts Venue Management, LLC**

37.    At all relevant times, Defendant MGM Resorts Venue Management, LLC was a domestic limited-liability company duly licensed and incorporated under the laws of Nevada, and believed to be the concert and/or event promoter of the Route 91 Festival in September and October 2017.

**Defendant MGM Resorts International**

38.    At all relevant times, Defendant MGM Resorts International was a corporation duly licensed and incorporated under the laws of Delaware, with its principle place of business in Clark County, Nevada, and is the parent company and alter-ego of Defendant Mandalay Bay, LLC f/k/a Mandalay Corp., Defendant Mandalay Resort Group, and Defendant MGM Resorts Festival Grounds, LLC, Defendant MGM Resorts Venue Management, LLC, and is believed to be the owner, co-owner, operator, lessor, lessee and/or manager of Excalibur and Mandalay Bay, as well as Las Vegas Village, an open-air concert and event venue adjacent to the Mandalay Bay consisting of 15 acres of seating area with a capacity of 40,000 guests located at 3901 South Las Vegas Boulevard, Las Vegas, NV 89119 ("Las Vegas Village"). MGM Resorts International had its own VIP section inside the Las Vegas Village. MGM Resorts International is also believed to be the permit holder for the Route 91 Festival, and responsible for the security at the Mandalay Bay and Las Vegas Village.

**Unknown Defendants**

39.    The true names and/or capacities, whether individual, corporate, partnership, associate or otherwise, of the Defendants herein designated as Does and/or Roes are unknown to Plaintiffs at this time who, therefore, sues said Defendants by fictitious names. Plaintiffs allege that each named Defendant herein designated as Does and/or Roes is negligently, willfully, contractually, or otherwise legally responsible for the events and happenings herein referred to and proximately caused damages to Plaintiffs as herein alleged. Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when they have been ascertained and will further seek leave to join said Defendants in these proceedings.

- 9 -

**FIRST AMENDED COMPLAINT**

40.     Plaintiffs are informed and believe and thereon alleges that at all times mentioned herein, Does and/or Roes were agents, servants, employees, partners, distributors or joint venturers of each other and that in doing the acts herein alleged, were acting within the course and scope of said agency, employment, partnership, or joint venture. Each and every Defendant aforesaid was acting as a principal and was negligent or grossly negligent in the selection, hiring and training of each and every other Defendant or ratified the conduct of every other Defendant as an agent, servant, employee or joint venture.

41.     Plaintiffs are informed and believe and thereon allege that Defendants Mandalay Bay, LLC f/k/a Mandalay Corp.; Mandalay Resort Group; MGM Resorts Festival Grounds, LLC; MGM Resorts Venue Management, LLC; MGM Resorts International; and Does/Roes currently unknown to Plaintiffs at this time participated in a joint venture when it organized, held, marketed, secured and/or otherwise hosted the Route 91 Festival. Defendants, as co-venturers to this business enterprise, relied on each other's unique skill and expertise in order to share in the profits from the Route 91 Festival. What neither could accomplish on its own, the Defendants could accomplish together as part of the joint venture.

## JURISDICTION AND VENUE

42.     Exercise of the jurisdiction by this Court over each and every Defendant in this action is appropriate because each and every Defendant has done, and continues to do, business in the State of Nevada, and committed a tort in the State of Nevada.

43.     Exercise of the jurisdiction by this Court is further appropriate where all incidents described herein occurred in Clark County, Nevada.

## GENERAL ALLEGATIONS

**A. MGM Failed to Exercise Due Care**

44.     Plaintiffs reallege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein. Based on information and belief, Plaintiffs assert the additional allegations below.

45.     The Shooter was a VIP guest of Mandalay Bay, and his room charges were compensated by the hotel. The Shooter was permitted to specifically select his room—choosing

- 10 -

**FIRST AMENDED COMPLAINT**

rooms with a vantage point from which to carry out the Mass Shooting—and to make changes to the layout of the rooms to assist with his plan.

46. Because of his VIP status, MGM gave the Shooter extra leeway and privileges, and either relaxed or failed to enforce the inadequate security policies and procedures that it has in place for the safety of its guests.

47. On Monday, September 25, 2017, six days before the October 1, 2017 Mass Shooting, the Shooter checked into corner suite 32-135 on the 32nd Floor of the Mandalay Bay, a suite specifically selected by the Shooter with a view overlooking the Route 91 Festival.

48. On September 29, 2017, the Shooter, despite apparently being alone his entire stay, used his girlfriend's name to check into suite 32-134, which connected with room 32-135 via a door in between. Both rooms had a scheduled check-out date of October 2, 2017.



49. MGM, including the Mandalay Bay premises, has a "strict no weapons" policy. In so doing, MGM voluntarily assumed, and continues to assume, a duty to protect its patrons by prohibiting firearms on its premises, recognizing such prohibition as being necessary for their safety. However, MGM failed to enforce this policy against the Shooter, which resulted in the Plaintiffs' damages.

50. After checking in, MGM's employees allowed the Shooter to use a service elevator to transport numerous bags, which contained an arsenal of weapons, explosive material, and ammunition, to his room. It is against MGM's policy, which is designed for the safety of its guests, to allow non-employees to use the service elevators or bring firearms onto hotel premises.

- 11 -

**FIRST AMENDED COMPLAINT**

51.     Specifically, based on Event # 171001-3519 LVMPD Force Investigation Team Report ("Report"), subsequent reports, and upon information and belief, not only was MGM negligent in prohibiting firearms, ammunition, and explosives to accumulate in rooms 32-135 and 32-134, but MGM's employees escorted, delivered, carried and/or helped the Shooter carry the prohibited and dangerous items to the rooms:

a. On September 25, 2017, at approximately 4:56 pm, the Shooter had valet at Mandalay Bay unload his vehicle and then went to the front desk with approximately **five suitcase bags**. A Mandalay Bay bellman met the Shooter who requested to use the service elevators, not the guest elevators, and escorted him to room 32-135. The Shooter rolled one bag and the bellman used a luggage cart to carry approximately four bags with firearms, assault weapons, ammunition, tripods, explosive material, and other prohibited items:



b. On September 26, 2017, at approximately 10:52 pm, the Shooter again valeted his vehicle at Mandalay Bay and this time had approximately **seven additional suitcase bags** removed from his vehicle and had six placed on a luggage cart and rolled one himself. Again, the Mandalay Bay bellman took the seven bags and the Shooter through the service elevator instead of the guest elevators to room 32-135:

- 12 -

**FIRST AMENDED COMPLAINT**



c.  On September 28, 2017, at approximately 9:46 pm, the Shooter valeted his vehicle and removed approximately **one white container, two rolling suitcases** and **a laptop bag,** taking the service elevator to his room:



d.  On September 30, 2017, at approximately 5:56 am, the Shooter returned to Mandalay Bay and removed approximately **four suitcase bags** from his vehicle and moved them to his room:

- 13 -

**FIRST AMENDED COMPLAINT**



e. Also on September 30, 2017, at approximately 2:52 pm, valet retrieved the Shooter's vehicle, which the Shooter immediately moved to the self-parking garage. At approximately 3:12 pm, the Shooter retrieved approximately **two more bags** from his vehicle in self-parking and utilized the guest elevator to take the additional two bags to his room:



f. On October 1, 2017, at approximately 12:29 pm, the Shooter transported approximately **two additional rolling suitcases and another bag** hanging from one of the rolling suitcases and utilized the guest elevators to take the bags and rolling suitcases carrying prohibited items to his rooms:

- 14 -

**FIRST AMENDED COMPLAINT**

52.     MGM's employees also went into the Shooter's rooms multiple times to perform cleaning, housekeeping, and food service delivery or retrieval, where Plaintiffs believe employees either witnessed his cache of weapons, explosive materials, power tools, hammers, tripods, ammunition, and homemade gas masks, and failed to report their observations to law enforcement; or failed to recognize his cache of weapons, explosive materials, power tools, hammers, tripods, ammunition, homemade gas masks, and therefore negligently and carelessly did not report their observations to law enforcement.

53.     If the latter, MGM's employees still went into the Shooter's room and saw a single individual with more than 20 bags of luggage in his rooms, who refused to allow anyone in his rooms without his supervision, which should have triggered action on their part and on the part of any reasonable hotel employee/agent.

54.     Based on the above-mentioned Reports, and upon information and belief, MGM's employees negligently and carelessly failed to discover and/or notify law enforcement of the Shooter's wrongful, dangerous, suspicious, and potentially harmful conduct on at least the following dates and times:

    a.  On September 27, 2017, sometime after 4:00 pm, when delivering two entrees to the Shooter in room 32-135;

    b.  On September 27, 2017, at approximately 4:32 pm, when cleaning room 32-135 with the Shooter remaining in the room;

- 15 -

**FIRST AMENDED COMPLAINT**

c. On September 29, 2017, at approximately 2:00 pm, when cleaning room 32-135 with the Shooter remaining in the room and instructing the staff not to vacuum the floor;

d. On September 29, 2017, at approximately 11:00 pm, when delivering food to room 32-134 for the Shooter;

e. On September 30, 2017, around noon, when servicing the mini bar in room 32-134;

f. On September 30, 2017, shortly after noon, the Shooter placed a "Do Not Disturb" sign on the doors to rooms 32-135 and 32-134, and declined any further cleaning service; and

g. On October 1, 2017, at approximately 1:37 pm, when delivering another meal to room 32-134, trusted hotel staff employees accessed the room and were in contact with the Shooter, the room, the luggage, the prohibited firearms, ammunition or other prohibited items, including approximately 21 assault rifles, one long rifle, one handgun, 5,000 rounds of ammunition, explosive materials, power tools, hammers, tripods, and **at least 20 bags** which carried the prohibited items, including approximately 16 bags which were previously transported and delivered by MGM's employees.

55. Sometime between September 28, 2017 and October 1, 2017, the Shooter used power tools to bolt the stairwell door closed, which, remarkably, MGM either ignored given the Shooter's VIP status, or it went undetected until immediately prior to the Mass Shooting because of Mandalay Bay's inadequate security. And, on October 1, 2017, between 2:23 pm and 7:40 pm, the doors of rooms 32-134 and 32-135 were manipulated multiple times, which MGM detected, but ignored. For example, the doors were opened, closed, and the dead bolt locks were engaged and disengaged several times, without any investigation by MGM.

56. During this period, the Shooter used power tools to install one camera in the peephole of his suite and at least two more cameras in the hallway, with one of the cameras on a Mandalay Bay food service cart left by the Shooter in the hallway outside his room. The Shooter

- 16 -

used these video cameras to keep a lookout into on the hallway, and to attempt to thwart security and/or law enforcement:



57. Inexplicably, MGM either intentionally ignored this surveillance system entirely given the Shooter's VIP status, or it went completely undetected until after the Mass Shooting had ended because of Mandalay Bay's inadequate security.



58. Given the totality of the circumstances, MGM was either on notice that guests on its premises could be harmed by the Shooter, or, at a minimum, failed to enforce its "strict no weapons" policy and failed to exercise due care for the safety of its patrons or other persons on its premises that would have prevented the Mass Shooting from occurring.

**B. MGM's Negligence During the Mass Shooting**

59. Leading up to the Route 91 Festival event, MGM actively promoted the event, including comping its patrons with free tickets to the festival and having its employees, including dealers at Mandalay Bay, promote the event to the hotel's patrons.

- 17 -

**FIRST AMENDED COMPLAINT**

60.     On the Route 91 Festival website, Mandalay Bay and MGM's other hotels—with the majority of properties belonging to Mandalay Resort Group—were promoters of the event, offering exclusive hotel offers to those in attendance:

 

61.     MGM also used social media to promote the Route 91 Festival, including the twitter accounts of both MGM Resorts International and Mandalay Bay:



- 18 -

**FIRST AMENDED COMPLAINT**

62.     On October 1, 2017, Plaintiffs entered the Route 91 Festival, which took place at the Las Vegas Village, a recreational facility owned by MGM that is adjacent to and used or maintained in connection with MGM's Mandalay Bay, Excalibur, Delano, Luxor, and other MGM hotels. As they entered the Las Vegas Village the Plaintiffs' person and possessions were searched for weapons.

63.     At approximately 8:40 p.m., a HotSOS alarm (triggered when a guest's room door is left ajar for a predetermined amount of time) was generated from room 32-129. MGM has a policy to investigate such alarms in order to ensure the safety of its guests and its guests' belongings. MGM deliberately waited until 9:11 p.m., over 30 minutes after the alarm was generated, to assign Mandalay Bay's security guard Jesus Campos to investigate room 32-129. Remarkably, Mr. Campos waited until approximately 9:47 p.m., more than one hour after the HotSOS alarm was first generated, to investigate room 32-129.

64.     Plaintiffs are informed and believe and herein allege that this inexcusable delay was due to a lack of security staffing, and MGM's inadequate security policy and procedures, which forced Mr. Campos, the only security guard responsible for the 100-wing section of the Mandalay Bay at the time, to investigate four other HotSOS alarms first.

65.     While on route to room 32-129 through the 100-wing stairwell, Mr. Campos noticed the stairwell entrance to the 32nd floor had been barricaded, preventing his access to the 32nd Floor. At approximately 10:00 p.m., after walking up to the 33rd floor and using a guest elevator to get to the 32nd Floor, Mr. Campos confirmed room 32-129 was secure. He then checked the entrance to the 100-wing stairwell and discovered an "L" bracket screwed into the door and frame, preventing it from being opened. Inexplicably, Mr. Campos reported this finding to the Maintenance Department instead of MGM Security.

66.     Due to MGM's lack of staffing and inadequate security policies and procedures, Mr. Campos failed to immediately check the HotSOS alarm for room 32-129, which would have resulted in Mr. Campos investigating the 100-wing stairwell entrance much sooner.

67.     At approximately 10:00 p.m., during the performance of Jason Aldean, the Shooter broke out two windows in his Mandalay Bay Hotel rooms, and began firing gunshots at the Route 91 Festival on the adjacent MGM owned property. Shortly after the shooting began, Mr. Campos

- 19 -

**FIRST AMENDED COMPLAINT**

walked down the 100-wing hallway when the Shooter fired shots at Mr. Campos, striking him in the left calf with a bullet fragment. Despite Mr. Campos telling his dispatcher that shots had been fired from room 32-135, MGM failed to immediately and correctly report this information to law enforcement, leading to a delayed and imprecise response by law enforcement, causing and contributing to the injuries and damages suffered by Plaintiffs.

68.     At approximately 10:10 p.m., hotel engineer, Stephen Schuck, arrived on the 32nd floor to investigate the "L" bracket blocking the stairwell entrance. While on route, Mr. Shuck reported to Mandalay Bay personnel that someone was shooting a rifle in the 100-wing hallway on the 32nd floor. Still, MGM failed to immediately and correctly report this information to law enforcement, leading to a delayed and imprecise response by law enforcement, causing and contributing to the injuries and damages suffered by Plaintiffs.

69.     For up to 20 minutes, the Shooter used an arsenal of weapons firing hundreds of rounds at the Route 91 Festival without interruption, killing 58 guests, including Brian Fraser, and injuring hundreds of others, including Stephanie Fraser, Rachel Sheppard, Jovanna and Francisco Calzadillas, Nicholas Robone, and Anthony Robone. Despite having direct knowledge of the exact location of the Shooter, at no point did MGM take any action to stop, deter, minimize the harm caused by the Shooter, or otherwise intervene.

70.     Despite the fact that Mr. Campos and Mr. Schuck both reported that shots were coming from room 32-135 and the 100-wing hallway of the 32nd floor, MGM failed to properly relay the Shooter's exact location to law enforcement or immediately send its own security to stop the Shooter. The Report indicates law enforcement had "conflicting information on the exact location of the Shooter(s) whether it was on the 31st, 32nd, or 33rd floors." Further when strike teams arrived, each group was "given information the Shooter was possibly on the 29th or 31st floor and taken there by elevator." Additional wrong information resulted in law enforcement being sent to the Foundation Room on the top floor of the Mandalay Bay. These failures caused by MGM allowed the Shooter to continue the Mass Shooting uninterrupted, causing and contributing to Plaintiffs' injuries.

71.     During Jason Aldean's performance, Rachel Sheppard was shot three times—once in the upper chest, once in the torso, and once in the abdomen. The shots threw her to the ground,

- 20 -

where she injured her back and laid down screaming and jolting in pain. One bullet was removed in surgery during her initial hospitalization. Another bullet was removed during an additional surgery in December 2017. Rachel continues to have one bullet and numerous fragments in her body.

72.     During the ensuing chaos, a Good Samaritan picked Rachel up and carried her to the medical tent where she waited approximately 45 minutes for medical assistance. This Good Samaritan eventually forced himself into an ambulance and held Rachel Sheppard in the ambulance applying compresses to her bullet wounds. But for the heroic efforts of the Good Samaritan, Rachel Sheppard would probably have died at the scene like so many others. Rachel will be impacted and impaired for life as a result of the damages incurred.

73.     Similarly, the Frasers were in attendance of the Route 91 Festival with a large group of family and friends watching Jason Aldean's performance. During the performance, they heard what sounded like packaged firecrackers go off. Although, at first, they did not believe the sounds were gun shots, upon hearing the noise again, their friend forced them to the ground to protect them.

74.     While on the ground, Stephanie Fraser witnessed Brian Fraser crouch down to the ground and contort into a ball behind her. After the gun shots stopped, Stephanie Fraser began to stand up, and saw her husband and others fall to the ground when a second round of gunshots started.

75.     One of the Frasers' friends confirmed Brian Fraser had been shot, and he moved Brian and Stephanie Fraser to the VIP section bleachers, where two other people attempted to give Brian Fraser CPR while Stephanie Fraser watched. Stephanie Fraser continued to watch her husband receive CPR until Good Samaritans placed Brian Fraser into a wheelbarrow and they were forced to leave the premises. As a result of the chaos surrounding the shooting and the lack of clearly defined exits, Stephanie Fraser became separated from her husband, and learned hours later that he did not survive.

76.     Likewise, during Jason Aldean's performance, the Calzadillas were near the stage watching the final performance of the night. They were vacationing in Las Vegas after Francisco Calzadilla just returned home from deployment in the Middle East.

- 21 -

**FIRST AMENDED COMPLAINT**