1   JAMES J. PISANELLI, State Bar No. 4027
    JJP@pisanellibice.com
2   TODD L. BICE, State Bar No. 4534
    TLB@pisanellibice.com
3   DEBRA L. SPINELLI, State Bar No. 9695
    DLS@pisanellibice.com
4   PISANELLI BICE PLLC
    400 South 7th Street
5   Las Vegas, NV 89101
    (702) 214-2100
6
    BRAD D. BRIAN
7   *Pro hac vice forthcoming*
    MICHAEL R. DOYEN
8   *Pro hac vice forthcoming*
    DANIEL B. LEVIN
9   *Pro hac vice forthcoming*
    BETHANY W. KRISTOVICH
10  *Pro hac vice forthcoming*
    MUNGER, TOLLES & OLSON LLP
11  350 South Grand Avenue, 50th Floor
    Los Angeles, CA 90071-3426
12  (213) 683-9100
    brad.brian@mto.com
13
    Attorneys for Defendants MGM Resorts International,
14  Mandalay Bay, LLC, Mandalay Resort Group,
    MGM Resorts Festival Grounds, LLC, and
15  MGM Resorts Venue Management, LLC

16

17                  **UNITED STATES DISTRICT COURT**

18                       **DISTRICT OF NEVADA**

19
    RACHEL SHEPPARD, *et al.*,              No. 2:18-cv-01120-RFB-VCF
20
                    Plaintiffs,
21                                          **DEFENDANTS' MOTION TO DISMISS**
           vs.                              **FIRST AMENDED COMPLAINT**
22
    MANDALAY BAY, LLC, f/k/a                ORAL ARGUMENT REQUESTED
    MANDALAY CORP., *et al.*,
23
24                  Defendants.
25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................1

II.   SUMMARY OF RELEVANT ALLEGATIONS ...............................................4

III.  ARGUMENT ...................................................................................5

      A.   The Complaint Fails to State a Negligence Claim as a Matter of Law....................6

           1.   Defendants Did Not Owe a Duty to Prevent Paddock's
                Unanticipated and Unforeseeable Violence ...................................6

                (a)   Paddock's Unprecedented Crime Was Not
                      Reasonably Foreseeable as a Matter of Law....................................7

                (b)   Plaintiffs' Claims Are Contrary to Settled Law and Policy............11

           2.   Paddock's Extreme Criminal Conduct, Not Any Alleged Negligence
                by Defendants, Was the Cause of Plaintiffs' Injuries .................................13

                (a)   Paddock's Crime Was a Superseding Cause as a Matter of Law ...13

                (b)   Premeditated Murders Like Paddock's Are Predominant Causes
                      of Injury as a Matter of Law ...........................................16

      B.   The Complaint Fails to Plead Negligent Infliction of Emotional Distress .............17

      C.   The Other Negligence-Based Claims Necessarily Fail as a Matter of Law............19

      D.   The Punitive-Damages Claim Fails as a Matter of Law .........................................22

IV.   CONCLUSION.................................................................................22

Defendants MGM Resorts International, Mandalay Bay, LLC, Mandalay Resort Group, MGM Resorts Festival Grounds, LLC, and MGM Resorts Venue Management, LLC hereby move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Complaint ("Complaint") in its entirety because it fails to state a claim upon which relief can be granted. Even if all of the facts alleged by Plaintiffs were true—which they are not—the Complaint fails as a matter of law. This Motion is supported by the memorandum of points and authorities below, the papers and pleadings on file in this action, all other matters of which judicial notice may be taken, and such further argument as may be presented in Reply and at any hearing on the Motion.

Defendants are aware of this Court's stated preference for resolving any jurisdictional issues prior to considering motions to dismiss. Defendants' counsel conferred with Plaintiffs' counsel and were unable to reach an agreement that would eliminate the need to file this motion within the seven days required by Federal Rule of Civil Procedure 81. Defendants have no objection to deferring consideration of this Motion pending any such jurisdictional challenge, and defer to the Court's sound discretion on such matters.

## I.   <u>INTRODUCTION</u>

Stephen Paddock fired deliberately-modified assault rifles into a crowd of innocent unarmed concertgoers and employees at the Route 91 Harvest Festival with the evil intent of murdering and maiming. Plaintiffs concede, as they must, that Paddock meticulously planned and "orchestrat[ed]" his crime. (Compl. ¶ 2.) He then "broke out the windows in his rooms and used an arsenal of weapons to reign gun fire on persons in attendance of the Route 91 Festival." (*Id.* ¶ 9.) As Plaintiffs put it, Paddock "fir[ed] hundreds of rounds at the Route 91 Festival without interruption, killing 58 guests." (*Id.* ¶ 69.)

Rather than sue Paddock, Plaintiffs have filed this lawsuit against MGM, Mandalay Bay and other MGM entities, claiming that they breached a duty to *prevent* Paddock's unprecedented crimes. Defendants and the entire Las Vegas community grieve with every person affected by Paddock's crimes. But the courts have repeatedly made clear that Defendants cannot be liable for Paddock's extreme, intentional violence.

Plaintiffs' claims are governed by the Support Anti-terrorism by Fostering Effective

Technologies Act of 2002, 6 U.S.C. §§ 441-444 (the "SAFETY Act"), which provides for exclusive federal jurisdiction over "all actions for any claim for … personal injury, or death" arising from acts of mass violence where technologies or services certified by the Department of Homeland Security were employed to prevent or respond to mass violence. *Id.* § 442(a)(2). At an appropriate time, Defendants will bring a motion based on the protections provided by the SAFETY Act.

Even aside from the SAFETY Act, Plaintiffs' Complaint fails to state a cause of action. Courts have repeatedly rejected negligence claims of the sort asserted by Plaintiffs—after the Columbine shooting, after the Aurora shooting, after the Colorado Planned Parenthood shooting, and after the mass shooting at a McDonald's in California. These courts held that there is no premises liability where, as Plaintiffs here concede, a third party carried out a cold, calculated plan of extreme lethal violence. Such a crime—stunning, inexplicably sadistic, arising from some unknown place in a deranged mind—is unforeseeable as a matter of law, and breaks any possible chain of legal causation. Such conduct exceeds the ordinary bounds of humanity, and tort law does not permit shifting responsibility for it to other innocent victims; such inescapably evil and violent conduct cannot be transformed by existing law into something that is ordinary and must be expected, and that imposes liability on innocent parties.

It would be unprecedented—on a national scale—to hold otherwise. Imposing liability on Defendants would throw out established tort law and saddle businesses across the country with crippling liability for the evil acts of madmen—acts those businesses can, in the end, neither foresee nor prevent.

Shifting liability will not bring an end to the scourge of mass shootings. Paddock's crime occurred *despite*, not because of, the efforts of Defendants' employees—many of whom were its victims. As courts have recognized, making property owners responsible for the independent, unforeseeable acts of a cold, calculating criminal threatens whole industries with extraordinary and crippling liability, while encouraging intrusive and ultimately ineffective security measures that invade the rights of all—endless TSA-style bag searches, body searches, intrusive video recording, unannounced car and room inspections. Such measures violate the most basic privacy rights of innocent people; and such measures would fail to prevent determined criminals with easy access to

violent assault weapons from turning those weapons on innocent victims going about their lives, at social occasions as old as history: musical performances, churches, theaters, stores, parks, schools and every other public place and occasion.

As the cases and the settled principles of tort law make clear, even assuming all of Plaintiffs' allegations were true, binding law compels dismissal of the claims against Defendants. Plaintiffs' negligence claims fail as matter of law, for multiple, independent reasons.

*First*, Paddock's carefully plotted and concealed attack, turning lethal assault weapons on a crowd a quarter-mile away, was unprecedented and unforeseeable as a matter of law. No facts alleged in the Complaint suggest that anything like it occurred before at Defendants' properties, at any Las Vegas hotel or at any other hotel or concert in America.

*Second*, Plaintiffs' allegations make clear that they cannot establish causation. As in other mass-shooting cases, it is Paddock—the evil criminal who deliberately fired on innocent people—who was, as a matter of law, the superseding and predominant cause of the murders he carried out and the injuries he intentionally and callously inflicted.

Plaintiffs' other claims—for negligent infliction of emotional distress, loss of consortium, wrongful death, premises liability, negligent hiring, negligence per se, and nuisance—also fail as a matter of law, among other reasons, because they are derivative of Plaintiffs' negligence claim, which fails as a matter of law. In addition, Plaintiffs plead no basis for their demand for punitive damages. Everyone, including Plaintiffs, knows the source of the evil and malice in this case: Stephen Paddock.

If Plaintiffs believe—contrary to all experience—that imposing limitless liability on businesses will bring an end to calculated mass shootings by armed and determined men, then Plaintiffs' appeal must be to the legislature, not to the courts, for settled tort law imposes no such liability. That a long-time guest with no history of threats of violence would unleash an evil lethal assault on tens of thousands of innocent people is so far beyond the bounds of civil society as to be unforeseeable as a matter of law. The cause, legally and morally, of Plaintiffs' tragic injuries is Stephen Paddock's intentional and determined acts to murder and maim. Plaintiffs' claims must be dismissed.

DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
No. 2:18-cv-01120-RFB-VCF

1    II.    **SUMMARY OF RELEVANT ALLEGATIONS**

2         The Complaint makes the allegations described below. Many of Plaintiffs' allegations are

3    false and directly contradicted by the law enforcement investigation and reports. But, for purposes

4    of this Motion only, Plaintiffs' false allegations are accepted as true:

5         Plaintiffs attended "the Route 91 Festival, a three-day country music festival promoted by

6    and held on MGM premises." (Compl. ¶ 9.) The festival was held at "Las Vegas Village, an open-

7    air concert and event venue adjacent to the Mandalay Bay." (*Id.* ¶ 38.)

8         On September 25, 2017, Stephen Paddock—anonymized by Plaintiffs as "the Shooter" to

9    minimize his significance as a deeply twisted human being—checked into the Mandalay Bay hotel

10   and "specifically requested two rooms overlooking the Route 91 Harvest Festival." (*Id.* ¶¶ 7, 47.)

11   Over multiple days to evade detection, Paddock brought to his rooms a "cache of weapons,

12   explosive materials, power tools, hammers, tripods, ammunition, and homemade gas masks."

13   (*Id.* ¶ 52.)

14        At some unidentified point, Paddock is alleged to have "installed an elaborate surveillance

15   system." (*Id.* ¶ 7.) He "used power tools to install one camera in the peephole of his suite and at

16   least two more cameras in the hallway," and used them "to keep a lookout" and "to attempt to

17   thwart security and/or law enforcement." (*Id.* ¶ 56.) He also "used power tools to bolt the stairwell

18   door closed." (*Id.* ¶ 55.)

19        On October 1, 2017, Paddock "broke out the windows in his rooms and used an arsenal of

20   weapons to reign gun fire on persons in attendance of the Route 91 Festival." (*Id.* ¶ 9.) He "fir[ed]

21   hundreds of rounds at the Route 91 Festival without interruption, killing 58 guests, including Brian

22   Fraser, and injuring hundreds of others, including Stephanie Fraser, Rachel Sheppard, Jovanna and

23   Francisco Calzadillas, Nicholas Robone, and Anthony Robone." (*Id.* ¶ 69.)

24        On October 13, 2017, Rachel Sheppard filed a complaint against certain MGM entities in

25   Clark County District Court. *See* Case No. A-17-763035-C. On December 6, 2017, Sheppard filed

26   an amended complaint, and on December 20, 2017, she voluntarily dismissed that action.

27

28

On February 16, 2018, Sheppard and Stephanie Fraser filed an action against certain MGM entities in Clark County District Court. *See* Case No. A-18-769752-C. On June 4, 2018, Sheppard, Fraser, and other plaintiffs filed the First Amended Complaint (the "Complaint").

The Complaint asserts ten causes of action, all based in alleged negligence: (1) negligence against all Defendants; (2) negligence against MGM Resorts International; (3) loss of consortium; (4) wrongful death; (5) premises liability; (6) negligent infliction of emotional distress; (7) negligence per se; (8) nuisance; (9) negligent hiring, retention, and supervision; and (10) gross negligence. (Compl. ¶¶ 152-293.)

On June 22, 2018, Defendants timely removed the action to this Court. Four similar actions are now pending in the United States District Court for the Central District of California.[1] Defendants anticipate consolidation by the United States Judicial Panel on Multidistrict Litigation.

## III.   ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Id.*; *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim").

Even aside from the SAFETY Act, Plaintiffs fail to plead facts showing a right to recover from *Defendants* for the harm caused by the unspeakably violent crimes of *Stephen Paddock*.

---

[1] *See Maggiore v. MGM Resorts Int'l*, No. 2:18-cv-05640-SVW-PLAx; *Bowers v. MGM Resorts Int'l*, No. 2:18-cv-05647-GW-RAO; *Ramirez v. MGM Resorts Int'l*, No. 2:18-cv-05564-GW-GJS; *Pereda v. MGM Resorts Int'l*, No. 2:18-cv-05570-R-JEM.

### A.      The Complaint Fails to State a Negligence Claim as a Matter of Law

To state a claim for negligence under Nevada law, Plaintiffs must allege facts showing "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). Plaintiffs fail to plead facts showing a duty, breach or causation for injuries caused by Paddock's intentional violent crimes.

### 1.      Defendants Did Not Owe a Duty to Prevent Paddock's Unanticipated and Unforeseeable Violence

The general rule is that "no duty is owed to control the dangerous conduct of another or to warn others of the dangerous conduct." *Sanchez*, 125 Nev. at 824, 221 P.3d at 1280. To establish such a duty, a plaintiff must show both that a "special relationship" exists between the parties *and* that "the harm created by the defendant's conduct is foreseeable." *Id.*

Whether these requirements are met is "a question of law solely to be determined by the Court." *Id.* at 823, 221 P.3d at 1280-81; *see Lee v. GNLV Corp.*, 117 Nev. 291, 295, 22 P.3d 209, 212 (2001) ("whether a 'duty' to act exists is a question of law solely to be determined by the court"); *Ashwood v. Clark Cty.*, 113 Nev. 80, 84, 930 P.2d 740, 742-43 (1997) ("It is the courts and not juries that have the ultimate responsibility of defining duty in relation to particular circumstances"). Dismissal for lack of a duty therefore is appropriate at the pleading stage. *See, e.g.*, *Sanchez*, 125 Nev. at 826, 221 P.3d at 1282 (affirming dismissal on policy grounds); *Merluzzi v. Larson*, 96 Nev. 409, 414, 610 P.2d 739, 743 (1980) (same), *overruled on other grounds by Smith v. Clough*, 106 Nev. 568, 796 P.2d 592 (1990).

The Court's legal determination whether to impose a legal duty in a given case must be based on the "expression of the aggregate ... policy considerations." *Ashwood*, 113 Nev. at 84, 930 P.2d at 742-43. Where, as here, the "burdens associated with imposing such a duty" would be great, "considerations of social policy" preclude creating a legal duty. *Wiley v. Redd*, 110 Nev. 1310, 1316, 885 P.2d 592, 596 (1994).

#### (a)     Paddock's Unprecedented Crime Was Not Reasonably Foreseeable as a Matter of Law

A defendant has no duty to prevent a third party's unforeseeable crime. *See Sanchez*, 125 Nev. at 824, 221 P.3d at 1280. *Unforeseeable* crimes are not necessarily *unimaginable.* Liability "is circumscribed by the *reasonable foreseeability* of a third person's actions." *Vigil v. Harrah's Club*, 909 F.2d 1490, 1490 (9th Cir. 1990) (Nevada law). That a long-time guest with no known history of either threats or violence would carry out a mass murderous rampage for no known reason is unforeseeable as a matter of law.

Courts in Nevada and elsewhere regularly dismiss negligence actions where, as here, the allegations do not show that a third-party crime was foreseeable. *See, e.g.*, *Mangeris v. Gordon*, 94 Nev. 400, 403, 580 P.2d 481, 483 (1978) (affirming dismissal because "a reasonable person would not, from the facts alleged, foresee a risk" of murder and "[a]bsent the foreseeability of such a risk, respondents had no duty"); *Romero v. Giant Stop-N-Go of N.M., Inc.*, 146 N.M. 520, 523, 212 P.3d 408, 410 (2009) ("a sudden, deliberate, and targeted shooting" is unforeseeable as a matter of law).

Courts applying Nevada law have held that violent criminal acts are not foreseeable if a plaintiff fails to allege similar incidents at the same location. *See Vincent v. Four Queens, LLC*, 2016 WL 1355036, at *3 (D. Nev. Apr. 4, 2016) (assault and robbery in guest room not foreseeable, because plaintiffs did not allege similar prior acts at same casino in or near guest rooms); *Racine v. PHW Las Vegas, LLC*, 46 F. Supp. 3d 1028, 1033-34 (D. Nev. 2014) (no foreseeability as a matter of Nevada law because "a single incident of a battery against a couple taking pictures in the lobby does not render foreseeable the act of another individual following a guest into a room to commit a violent crime"), *aff'd*, 669 F. App'x 845 (9th Cir. 2016); *Estate of Smith ex rel. Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. 855, 856, 265 P.3d 688, 689 (2011) (shooting on casino floor was not foreseeable as a matter of law because prior fights and robberies in casino did not involve guns); *Wasmund v. Aria Resort & Casino Holdings, LLC*, 2015 WL 7779946, at *5 (Nev. Dist. Ct. July 1, 2015) (dismissing complaint because plaintiff did not allege similar prior acts that put casino on notice that third party would "commit the criminal acts of attempted murder, reckless driving, and voluntary manslaughter"), *aff'd*, 2017 WL 946326 (Nev. Ct. App. Mar. 6, 2017).

DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
No. 2:18-cv-01120-RFB-VCF

The Nevada Supreme Court's opinion in *Humphries v. New York-New York Hotel & Casino*, No. 65316, — Nev. —, 403 P.3d 358, 2017 WL 4456982 (Nev. Oct. 5, 2017), concedes the principle. The Court held that a Las Vegas hotel owed a duty to protect a guest from a fight on the casino floor because "*numerous similar patron-on-patron incidents* occurr[ed] *on the casino floor*"—*and* because those prior incidents "involved a *similar level of violence*." *Id.* at *4.

Plaintiffs do not, and cannot, allege any such pattern here. Indeed, Plaintiffs allege no prior incident—much less "numerous similar ... incidents." Nothing at Mandalay Bay or in Las Vegas resembles Paddock's extraordinarily vicious assault on concertgoers a quarter-mile away. That nothing like this *ever* had happened *anywhere* – let alone at Mandalay Bay or the Las Vegas Village – precludes as a matter of law the existence of a legal duty.

Addressing a similarly tragic, "maniacal, mass murderous assault," a California court held that a business owner had no legal duty to prevent a mass shooting because it was unforeseeable as a matter of law. *Lopez v. McDonald's Corp.*, 193 Cal. App. 3d 495, 509, 238 Cal. Rptr. 436, 445 (1987). *Lopez* involved a "deranged and motiveless attack" at a McDonald's that killed 21 people and wounded 11 others. *Id.* The court held that "the unforeseeability of the unique, horrific" attack "require[d] negligence liability to be restricted." *Id.* Because such an attack was "so unlikely to occur in the setting of modern life," the court held that "a reasonably prudent business enterprise would not consider its occurrence in attempting to satisfy its general obligation to protect business invitees from reasonably foreseeable criminal conduct." *Id.* at 509-10, 238 Cal. Rptr. at 445.

In *Wiener v. Southcoast Childcare Ctrs., Inc.*, 32 Cal. 4th 1138 (2004), the California Supreme Court held *as a matter of law* that a child care center had no duty of care to victims of an attack in which a man "intentionally drove his large Cadillac Coupe de Ville through the fence, onto the playground, and into a group of children." *Id.* at 1143. The Court held that "the foreseeability of a perpetrator's committing premeditated murder against the children was impossible to anticipate, and the particular criminal conduct so outrageous and bizarre, that it could not have been anticipated under any circumstances." *Id.* at 1150. Similarly, in *Romero*, the court dismissed a negligence claim based on a convenience-store shooting, holding that "a sudden, deliberate, and targeted shooting" is unforeseeable as a matter of law. 146 N.M. at 523, 212 P.3d

DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
No. 2:18-cv-01120-RFB-VCF

at 410. The court had found *no case* in which any court ever had "concluded that a business operator had a duty to prevent a sudden, deliberately targeted assassination of customers on its premises." *Id.* As a Virginia court explained in the wake of another shooting, Virginia Tech, like a common carrier, was not "'expected to guard and protect … against a crime so horrid, and happily so rare, as that of murder.'" *Commonwealth v. Peterson*, 286 Va. 349, 359, 749 S.E.2d 307, 359 (2013).

Paddock's "maniacal, mass murderous assault" from a high-rise hotel a quarter-mile from the Las Vegas Village venue was, as a matter of law, not reasonably foreseeable. *Lopez*, 193 Cal. App. 3d at 509, 238 Cal. Rptr. at 445. Just as the Complaint fails to allege any similar incident at a hotel, it fails to allege that any concert venue has experienced this type of attack before, or is or could be designed with this type of attack in mind. "[W]here, as here, we are presented with an open area which could be fully protected, if at all, only by a Berlin Wall, we do not believe a landowner is the cause of a physical assault it could not reasonably have prevented." *Nola M. v. Univ. of So. Cal.*, 16 Cal. App. 4th 421, 436-37, 20 Cal. Rptr. 2d 97, 108 (1993).

Indeed, even "a Berlin Wall" at the venue would not have protected Plaintiffs from Paddock's attack. Imposing liability on open-air venues for assaults like Paddock's would force them "to effectively close [their] property and prevent [their] use altogether," and "we ought not foist that burden haphazardly on persons not at fault for criminal misbehavior." *Id.*; *see Marr v. Yousif*, 167 Mich. App. 358, 364, 422 N.W.2d 4, 7 (1988) (affirming dismissal of negligence claim and declining to "create a duty on the part of storeowners to turn their stores into fortresses").

Moreover, the Complaint conflates Paddock's extraordinary crime with any "active shooter" scenario. The Complaint alleges that because criminals have showed up at public places with guns and began shooting, it was foreseeable that someone would stock a high-rise hotel room with fully automatic weapons, bust out the windows, and shoot down at a crowd of tens of thousands—something that has never happened before. Plaintiffs do not even try to allege it has happened before. Instead, the Complaint collects generic statements by various agencies—the FBI, DHS, FEMA, CDC, National Institute for Occupational Safety and Heath, National Safety Council, and Nevada Homeland Security Commission—acknowledging "active shooter" incidents. (Compl. ¶¶ 112, 114-120.) The Complaint alleges that a *Casino Journal* article stated that casinos should

DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
No. 2:18-cv-01120-RFB-VCF

"react properly to an active Shooter" (*id.* ¶ 102) and that insurers offer "active shooter and/or terrorist incident insurance" (*id.* ¶¶ 108, 113). These allegations fail plausibly to show that *Paddock's* extreme crime was reasonably foreseeable. In Plaintiffs' words, Paddock broke out the windows and, "us[ing] an arsenal of weapons to reign gun fire on persons in attendance of the Route 91 Festival" from the 32nd floor of Mandalay Bay (*id.* ¶ 9), raked hundreds of rounds indiscriminately into a massive crowd (*id.* ¶ 58).

Contrary to Plaintiffs' suggestion, the article "featur[ing]" Tom Lozich of MGM does *not* show that Defendants knew of "the need to be prepared for an active shooter" who would "reign gun fire" from a 32nd-floor hotel room upon the Las Vegas Village. (*Id.* ¶¶ 9, 110.) The article says no such thing. Rather, the article reflects Defendants' extraordinary investment in, and dedication to, hotel security, describing MGM's "24/7" "Corporate Watch Center" and "dedicated staff of investigators [that] monitors the properties and even street views around MGM properties," "gather[s] suspicious activity," "vet[s] that information" and "follow[s] up with law enforcement or security personnel." (*Id.*) That Defendants prepared diligently for what they could foresee does not make what Paddock did foreseeable, and should not be held against them.

The Complaint alleges that the Las Vegas Metropolitan Police Department "foresaw something similar" and conducted a training exercise with the FBI (*id.* ¶ 99), and cites a joint FBI and DHS report allegedly describing "the potential threat of lone offenders targeting mass gatherings, like music venues in Las Vegas" (*id.* ¶ 115). That *law enforcement* "[r]eportedly" might have conceived of a given threat does not make it reasonably foreseeable to a private business, such that a private business had a duty to *prevent* it. As the Complaint recognizes, law enforcement prepares for extraordinarily unlikely events, such as a "coordinated attack by a terrorist militia" (*id.* ¶ 99), but no court has *ever* placed the duty to thwart such an attack on a private business.

The Complaint also alleges, generally, that guns have been found on Mandalay Bay premises, notwithstanding MGM's own "no weapons" policy, and that other Las Vegas hotels take certain security measures, including "training … akin to a 'see something – say something' policy." (*Id.* ¶¶ 49, 97-98, 104-107.) The alleged facts show that MGM also had a "robust 'See Something, Say Something' initiative." (*Id.* ¶ 110.) And, the mere alleged presence of guns—readily available

and lawful in Nevada, and owned and lawfully carried by citizens throughout the country—does not plausibly make Paddock's unthinkable conduct reasonably foreseeable. The sale, purchase and availability of guns may be a political issue for some, but however that may be, it does not create liability on the part of private parties who do not sell guns to prevent their violent misuse.

In sum, the Complaint alleges no facts suggesting that Defendants could have reasonably foreseen that Paddock would suddenly stop being a peaceful customer and launch a murderous assault on a crowd enjoying a concert a quarter-mile away. Holding Paddock's crime "foreseeable" would create virtually limitless liability for businesses for acts that they can neither reasonably foresee nor ultimately prevent. Nor will imposing liability prevent such attacks: As the cases recognize, improvements in security "could not reasonably be expected to deter or hinder a maniacal, suicidal assailant unconcerned with his own safety, bent on committing mass murder." *Lopez*, 193 Cal. App. 3d at 517, 238 Cal. Rptr. at 450.

### *(b)   Plaintiffs' Claims Are Contrary to Settled Law and Policy*

Not only is imposing limitless liability for mass murder without foundation in the law, but Plaintiffs' notion that hotels must "surveil" *all* guests and "people coming and going from the hotel" with searches and "closed-circuit television" (Compl. ¶ 157) would impose heavy burdens and infringe the existing rights of everyone. In *Gray v. Kircher*, a California court refused to impose a duty on a hotel when one guest shot another, holding that "imposition of a duty to protect against this sort of criminal conduct would place 'an extremely onerous burden' on both [the hotel] and the community." 193 Cal. App. 3d 1069, 1075 (1987) (citation omitted). As the court explained, "hotels have no right to search the luggage and personal possessions of their tenants for possible weapons, and any attempt to do so would not only dramatically increase their cost of doing business and, therefore, the cost to the travelling public, but would also subject them to a multitude of lawsuits for invasion of privacy." *Id.*; *see Nola M.*, 16 Cal. App. 4th at 437 ("Who is going to pay for all this security? It is no answer to say that insurance is available. … [T]he cost just gets passed on to the consuming public, either by the insurer, the insured, or both."); *Larson v. St. Francis Hotel*, 83 Cal. App. 2d 210, 213 (1948) (no liability for hotel because "[t]o keep guests and visitors from throwing furniture out windows would require a guard to be placed in every room in the hotel, and no one

would contend that there is any rule of law requiring a hotel to do that"); *see also Wiley*, 110 Nev. at 1316, 885 P.2d at 596 (alarm company had no duty as a matter of law to warn police officers about dangerous dogs on property because "recogniz[ing] such a duty" would create "a plethora of obligations including awareness, the obligation to become aware, and foreseeability that would adversely impact the ability of alarm companies to provide services at reasonable cost to the public").

As the Ninth Circuit has explained, "Part of what a person purchases when he leases a hotel room is privacy for one's person and one's things." *United States v. Young*, 573 F.3d 711, 721 (9th Cir. 2009); *see Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 1986 WL 32729, at *4-5 (C.D. Cal. Jan. 13, 1986) ("[A] guest at a hotel has a right of privacy to the peaceful enjoyment of the accommodation. In fact, an innkeeper is liable for damages if he or his employees unjustifiably enter the guest's room." (citation omitted)); *People v. Super. Ct.*, 3 Cal. App. 3d 648, 654 (1970) ("hotel employees cannot enter to search the personal effects of the tenant"); *see also Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 839 (Ga. 2011) (rejecting duty of motel to check on guest's health, despite specific warnings, because such a duty raised "crucial" questions "implicating the guest's privacy" and "significant policy considerations including the potential fiscal impact on the hotel/motel industry").

The abolition of existing guest privacy rights, like the creation of a new duty to prevent mass murder, is not the province of a court of law. The sweeping changes in law and policy demanded by Plaintiffs are the province of the legislature. Like every other state legislature, the Nevada Legislature has not chosen to impose such a duty on hotels or owners of other high-rise buildings, and a court applying Nevada law must honor that legislative choice.

Hotels and office buildings exist in urban areas—with crowds visible on the sidewalks, streets and neighboring areas. Plaintiffs' notion that all owners of hotels and offices must lock down their buildings with prison-style security on pain of liability for the evil acts of determined criminals would constitute a sweeping change in law and in American public life.

1

2

   **2.**  **Paddock's Extreme Criminal Conduct, Not Any Alleged Negligence by Defendants, Was the Cause of Plaintiffs' Injuries**

3

   Plaintiffs fail as a matter of law to plead that Defendants caused the death of Brian Fraser

4

and the injuries to other Plaintiffs. Plaintiffs' own allegations establish that Paddock's intentional

5

and vicious crime was the proximate, superseding and predominant cause of Mr. Fraser's death and

6

Plaintiffs' injuries.

7

    *(a)*  *Paddock's Crime Was a Superseding Cause as a Matter of Law*

8

   Paddock's intentional, malicious, violent criminal conduct—not any alleged negligence by

9

Defendants—was the proximate and superseding cause of Plaintiffs' injuries. A superseding cause

10

"preclud[es] ... liability" of other defendants as a matter of law. *Bower v. Harrah's Laughlin, Inc.*,

11

125 Nev. 470, 492, 215 P.3d 709, 725 (2009). "When a third party commits an intentional tort or a

12

crime, the act is a superseding cause, even when the negligent party created a situation affording

13

the third party an opportunity to commit the tort or crime." *Id.*

14

   To determine whether an intervening cause is "superseding," Nevada courts consider:

15

16

17

18

   whether (1) the intervention causes the kind of harm expected to result from the actor's negligence, (2) the intervening event is normal or extraordinary in the circumstances, (3) the intervening source is independent or a normal result of the actor's negligence, (4) the intervening act or omission is that of a third party, (5) the intervening act is a wrongful act of a third party that would subject him to liability, and (6) the culpability of the third person's intervening act.

19

*Id.* (citing Restatement (Second) of Torts § 442).[2] *See Brewer v. Teano*, 40 Cal. App. 4th 1024,

20

1037, 47 Cal. Rptr. 2d 348, 352 (1995) (affirming dismissal of negligence claim because third

21

party's actions were superseding cause under factors of Restatement (Second) of Torts § 442).

22

   Every one of the six factors shows that Paddock's mass murder is a "superseding" cause:

23

   1. Paddock's murder of concertgoers more than a quarter-mile from his room was not "the

24

kind of harm *expected* to result" from any alleged negligence at the hotel. *Bower*, 125 Nev. at 492,

25

26

27

28

---

[2] Nevada courts "often look to the Restatements for guidance." *Matter of Frei Irrevocable Tr. Dated Oct. 29, 1996*, 133 Nev. 8 n.3, 390 P.3d 646, 650 n.3 (2017); *see Mathis v. Cty. of Lyon*, 2014 WL 1413608, at *14 n.6 (D. Nev. Apr. 11, 2014) ("The Nevada Supreme Court often relies on the Restatement (Second) of Torts"), *aff'd*, 591 F. App'x 635 (9th Cir. 2015); *Holcomb v. Georgia Pac., LLC*, 128 Nev. Adv. Op. 56, 289 P.3d 188, 196 (2012) ("Nevada relies on the substantial factor test of the Restatement (Second) of Torts § 431 to determine legal causation").

215 P.3d at 725 (emphasis added); *see Phan Son Van v. Pena*, 990 S.W.2d 751, 755 (Tex. 1999) ("the harm inflicted by the gang members [*i.e.*, murder] was different in kind from that generally contemplated by the duty not to furnish alcoholic beverages to minors").

2.  Paddock's attack was, by any standard, "extraordinary," *not* "normal" in these or any other circumstances. *Bower*, 125 Nev. at 492, 215 P.3d at 725. Plaintiffs do not seriously contend otherwise, despite alleging that "mass shootings" are a "common occurrence." (Compl. ¶ 1.)

3.  Paddock's attack was concededly "independent," and in no sense the "normal result" of any alleged negligence. *Bower*, 125 Nev. at 492, 215 P.3d at 725. Plaintiffs allege that Paddock brought "a cache of weapons, explosive materials, power tools, hammers, tripods, ammunition, and homemade gas masks" (*id.* ¶ 52), "installed an elaborate surveillance system" (*id.* ¶ 7), "barricade[d] an entrance in the hallway" (*id.* ¶ 8), and, "paus[ing] to reload or switch weapons," committed a "massacre" (*id.* ¶ 148). Nothing about this was "normal" result of anything.

4.  Paddock was indisputably a "third party" not affiliated with Defendants. *Bower*, 125 Nev. at 492, 215 P.3d at 725.

5.  There is no question but that Paddock's attack was extremely "wrongful" and would "subject him to liability"—presumably the death penalty. *Id.*

6.  The "culpability" of Paddock's conduct also is beyond dispute. As Plaintiffs allege, Paddock murdered innocent people with abundant premeditation. *See Bower*, 125 Nev. at 492, 215 P.3d at 725; *Phan Son Van*, 990 S.W.2d at 755 (finding fourth, fifth, and sixth factors of § 442 satisfied because "[t]he gang members' [murders] were clearly wrongful, and they were found criminally liable").

Far less egregious conduct has been held a superseding cause precluding liability of others. In *Bower*, for example, the plaintiffs were guests at Harrah's who were mistreated by Metro officers after a brawl at the hotel between motorcycle gangs. 125 Nev. at 477, 490-91, 215 P.3d at 715, 724. The plaintiffs brought a negligence claim against Harrah's, arguing that the hotel had failed to take adequate steps to prevent foreseeable harm. *Id.* The Nevada Supreme Court held that, regardless of the adequacy of Harrah's efforts to protect guests, the officers' intentional, tortious conduct was unforeseeable as a matter of law and therefore was the superseding cause of the plaintiffs' injuries.

1  *Id.* at 492, 215 P.3d at 725. Expressly applying the Restatement factors, the Court held that the

2  officers' "treatment of [plaintiffs] was wrongful and suggest[ed] a high degree of culpability" and

3  that the plaintiffs' alleged injuries—mistreatment by the police—were "not the type [of harm]

4  expected to result from Harrah's negligence in failing to protect its patrons from the criminal acts

5  of motorcycle gangs." *Id.* Here, Paddock's actions were far more extraordinary and culpable than

6  the conduct of the officers in *Bower*.

7       Other courts likewise have dismissed negligence claims because extreme and violent

8  criminal acts were the superseding cause of plaintiffs' injuries. Victims of the Oklahoma City

9  bombing sued the manufacturers of the key ingredient the bomber used to create the bomb. *See*

10  *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613 (10th Cir. 1998). The Tenth Circuit

11  affirmed dismissal, holding that the plaintiffs had failed to allege a viable negligence claim against

12  the manufacturer, because the "criminal activities of the bomber or bombers acted as the

13  supervening cause of plaintiffs' injuries." *Id.* at 621 (applying Section 448 of the Restatement).

14  That "the occasional irrational individual" might exploit negligent distribution of ammonium

15  nitrate to build a bomb did not make such extreme criminal acts foreseeable. *Id.*; *see Port Auth. of*

16  *N.Y. & N.J. v. Arcadian Corp*, 189 F.3d 305, 319 (3d Cir. 1999) (1993 World Trade Center bombing

17  was "not the natural or probable consequence" of defendants' alleged negligence as a matter of law

18  and "the terrorists' actions were superseding ... events breaking the chain of causation").

19       In *Garcia v. El Paso Ltd. Partnership*, 203 S.W.3d 432 (Tex. App. Ct. 2006), the mother of

20  a drive-by-shooting victim alleged that a restaurant failed to provide adequate security. *Id.* at 433.

21  The court held that, as a matter of law, "the intentional, violent criminal acts committed by [the

22  shooter] were not foreseeable and were a superseding cause." *Id.* at 438; *see id.* at 437 (shooter's

23  "premeditated" and "deliberate" conduct was "extraordinary and cannot be characterized as a

24  normal consequence of failing to have a security guard on the premises of a drive-in restaurant").

25       Paddock's "intentional, violent criminal acts" were the superseding cause of Plaintiffs'

26  alleged injuries. Paddock "engaged in violent criminal conduct" that was "premeditated,"

27  "targeted," and "deliberate." *Id.* at 438. His actions were "extraordinary and cannot be characterized

28  as a normal consequence" of any negligence of defendants. *Id.* at 437. That "the occasional

DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
No. 2:18-cv-01120-RFB-VCF

irrational individual" might exploit alleged negligence to commit crimes of extreme violence does not make such crimes normal or expected or foreseeable. *Gaines-Tabb*, 160 F.3d at 621.

### (b)   Premeditated Murders Like Paddock's Are Predominant Causes of Injury as a Matter of Law

Regardless of the "superseding cause" doctrine, Plaintiffs' claims fail because their own pleading shows that Paddock was the *predominant* cause of their injuries. When "a number of events" or actors bring about a particular harm, one actor or event "may have such a predominant effect in bringing it about" as to render "the effect of the [other actors'] negligence insignificant." Restatement (Second) of Torts § 433, cmt. (d) (1965).

In mass-shooting cases, courts have held that deliberate acts of extreme violence necessarily *predominate* over alleged negligence by landowners or other third parties. In *Nowlan v. Cinemark Holdings, Inc.*, 2016 WL 4092468 (D. Colo. June 24, 2016), the court held that when James Holmes opened fire at a movie theater in Aurora, Colorado, he was the "predominant cause" of the plaintiffs' injuries as a matter of law, foreclosing liability for the defendant movie theater for allegedly not providing adequate security.[3] *Id.* at \*3; *see id.* ("*Even if* [the theater's alleged] omissions contributed in some way to the injuries and deaths, the Court finds that Holmes' premeditated and intentional actions were the predominant cause of plaintiffs' losses.").

In another case arising from the same mass shooting, a victim's family sued businesses that sold ammunition and other equipment to the shooter. *See Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015). The court granted the defendants' motion to dismiss. The court found "no question" that the shooter's "deliberate," "premeditated," and "meticulously" planned shooting was the "predominant cause" of plaintiff's injuries as a matter of law. The court held that "the alleged chain of causation ... [wa]s too attenuated to impose liability" on other defendants for conduct that unintentionally contributed to the crime. *Id.* at 1228; *see Wagner v. Planned*

---

[3] Like Nevada courts (*see supra*, note 2), Colorado courts follow the Restatement (Second) of Torts on predominant cause. *See, e.g., Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987) ("[I]f an event other than the defendants' negligence appears predominant, the defendants' negligence cannot be considered a substantial factor.") (citing Restatement (Second) of Torts § 433 cmt. a).

*Parenthood Fed. of Am., Inc.*, 2017 WL 6611125, at *3 (Colo. Dist. Ct. Oct. 30, 2017) (rejecting negligence claims by victims of shooting on Planned Parenthood premises because "deranged man ... seeking to commit a mass murder" was predominant cause of injuries and any contribution by defendant was "infinitesimal as compared to [that] shooting spree").

In *Castaldo v. Stone*, 192 F. Supp. 2d 1124 (D. Colo. 2001), the court dismissed a similar lawsuit arising from the Columbine High School shooting. The Court held that school officials were not a "legal cause" of the plaintiffs' injuries, because the shooters' conduct was the predominate cause, and "[i]f an event other than the defendant's alleged conduct appears predominant, the defendant's conduct cannot be a substantial factor." *Id.* at 1170-71; *see also Ireland v. Jefferson Cty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1232 (D. Colo. 2002) (dismissing claim against gun show organizer because "Harris' and Klebold's actions ... were the predominant, if not sole, cause of [Plaintiffs'] injuries").

The predominant cause doctrine has been applied even when the predominate cause is not an intentional crime: In *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806 (9th Cir. 2002), a laboratory claimed that it lost business after journalists trespassed on its property. The trespassing journalists discovered, and then reported, that the laboratory had missed cervical cancer on several pap smear slides. *Id.* at 821. The Ninth Circuit held that the laboratory's own misconduct in not detecting cancer was the "predominant" cause of their lost business as a matter of law, and that "[a]ny injurious effect from ... [the] alleged trespass, was negligible by comparison." *Id.*

As in the other mass-shooting cases, the actions of the shooter—here, Paddock's "firing hundreds of rounds at the Route 91 Festival without interruption, killing 58 guests" and injuring many more (Compl. ¶ 69)—was the predominant cause of Plaintiffs' injuries as a matter of law. As the cases discussed above make clear, Paddock's murderous assault is both a *superseding* cause and the *predominant* cause of Plaintiffs' injuries.

## B.   The Complaint Fails to Plead Negligent Infliction of Emotional Distress

Four Plaintiffs assert a claim for negligent infliction of emotional distress. (Compl. ¶¶ 218-230.) For multiple reasons, this claim fails as a matter of law.

*First*, for all of the reasons above, Plaintiffs fail to state a negligence claim against Defendants. Paddock's extreme and intentionally violent attack is not foreseeable as a matter of law and is the superseding and predominate cause of Plaintiffs' injuries.

*Second*, Plaintiffs fail to allege that they suffered physical manifestation of their alleged emotional distress. Under Nevada law, to state a claim for negligent infliction of emotional distress, a plaintiff must plead "*physical symptoms* caused by apprehending the death or serious injury of a loved one due to the negligence of the defendant." *State v. Eaton*, 101 Nev. 705, 718, 710 P.2d 1370, 1379 (1985), *overruled on other grounds by State v. Hill*, 114 Nev. 810, 963 P2d 480 (1998). The Complaint merely states, in identical language and without factual support, that Stephanie Fraser, Francisco Calzadillas, and Anthony Robone have "physical symptoms" of emotional distress. (Compl. ¶¶ 222-224.) This bare recitation of a required element is insufficient as a matter of law. *See Iqbal*, 556 U.S. at 678 (rejecting "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"); *Moss*, 572 F.3d at 969 ("'bare assertions' … are not entitled to an assumption of truth").

Courts applying Nevada law routinely dismiss claims based on more substantial allegations of physical manifestation. In *Ferm v. McCarty*, 2014 WL 6983234 (D. Nev. Dec. 9, 2014), the plaintiff alleged "depression, nervousness, grief, anxiety, insomnia, and other forms of emotional harm." *Id.* at *8. The court held that these allegations "do not meet the physical manifestation requirement" and dismissed the claim for negligent infliction of emotional distress. *Id.*; *see also Ballentine v. Las Vegas Metro. Police Dep't*, 2016 WL 950920, at *4 (D. Nev. Mar. 7, 2016) (dismissing claim alleging "constant anxiety"); *Mitchell v. City of Henderson*, 2015 WL 427835, at *21 (D. Nev. Feb. 2, 2015) (dismissing claim alleging "shock"); *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 483, 851 P.2d 459, 462 (1993) ("[i]nsomnia and general physical or emotional discomfort are insufficient").

*Third*, Plaintiff Rachel Sheppard alleges that she was physically injured, *not* that she witnessed physical injury to a close relative. (Compl. ¶ 221.) Nevada law limits emotional-distress claims only to *bystanders* who witnessed an injury to a close relative. *See, e.g.*, *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1279-80 (D. Nev. 2014) ("only a bystander may bring a claim for

1  negligent infliction of emotional distress"); *Pitti v. Albertsons, LLC*, 2012 WL 1931243, at *4

2  (D. Nev. May 29, 2012) ("direct victims may not bring NIED claims as they are not bystanders");

3  *Blanco v. Circus Circus Casinos, Inc.*, 2012 WL 1900942, at *2 (D. Nev. May 24, 2012)

4  (dismissing NIED claim "as [plaintiff] was not a bystander, but a direct victim").

5      **C.**    **The Other Negligence-Based Claims Necessarily Fail as a Matter of Law**

6      Plaintiffs assert various causes of action that are derivative of the negligence claim. Because

7  Plaintiffs fail to state a negligence claim, these claims fail as well.

8      ***Loss of Consortium.*** "A loss of consortium claim that is dependent on a spouse's personal

9  injury claim is a derivative claim and can only exist if the directly injured spouse can establish the

10  elements of the underlying cause of action." *Gonzales v. Las Vegas Metro. Police Dep't*, 2015

11  WL 4424552, at *6 (D. Nev. July 20, 2015); *see id.* (dismissing claim for loss of consortium where

12  spouse's personal-injury claim is dismissed) (citing *Turner v. Mandalay Sport Entm't, LLC*, 124

13  Nev. 213, 221, 180 P.3d 1172, 1177 (2008)). Dismissal of the negligence claims for the reasons

14  above requires dismissal of the derivative loss-of-consortium claim as well. *See Turner*, 124 Nev.

15  at 221-22, 180 P.3d at 1178 (affirming summary judgment on husband's loss-of-consortium claim

16  due to affirming summary judgment on wife's negligence claim).

17      ***Wrongful death.*** Like the loss-of-consortium claim, this claim is premised upon alleged

18  negligence by Defendants. *See* N.R.S. § 41.085(2) (action for death "caused by the wrongful act or

19  neglect of another"). Because Plaintiffs fail to state a claim for negligence, the wrongful-death

20  claim must be dismissed.

21      ***Premises liability.*** The cause of action for premises liability is redundant of the negligence

22  claim. It also requires the elements of duty and causation, and fails as a matter of law for the same

23  reason that the negligence claim fails. *See* N.R.S. § 651.015; *Humphries*, 403 P.3d at 360-61, 2017

24  WL 4456982 ("A plaintiff must establish four elements to succeed in an innkeeper liability suit:

25  '(1) duty, (2) breach, (3) proximate causation, and (4) damages.'" (quoting *Smith*, 127 Nev. at 858,

26  265 P.3d at 690)).

27      ***Negligent hiring, retention, and supervision.*** The cause of action for negligent hiring,

28  retention, and supervision likewise fails for the same reason the negligence claim fails. "To succeed

on a claim for negligent hiring, retention, and supervision of employees, a plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages." *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1280 (D. Nev. 2014) (citing *Hall v. SSF, Inc.*, 112 Nev. 1384, 1391, 930 P.2d 94, 99 (1996)). The Complaint fails to allege facts showing that the actions of any MGM employee—as opposed to the calculated mass murder committed by Paddock—caused their injuries, or that Defendants reasonably could have foreseen Paddock's crime. The allegation that some unspecified MGM employee might have "cause[d] a high risk to innocent parties such as Plaintiffs" is utterly baseless. (Compl. ¶ 269.)

**Negligence per se.** The purported cause of action for negligence per se fails as well. Under Nevada law, negligence per se is not a cause of action, but rather a means of *proving* negligence. *See Roeder v. Atl. Richfield Co.*, 2011 WL 4048515, at *7 (D. Nev. Sept. 8, 2011) (dismissing negligence per se claim because "[n]egligence per se is a legal issue attendant to a negligence claim"); *Munda v. Summerlin Life & Health Ins. Co.*, 127 Nev. 918, 922 n.3, 267 P.3d 771, 774 n.3 (2011) (negligence per se "is not a separate cause of action, but rather a method of establishing the duty and breach elements of a negligence claim"); *Cervantes v. Health Plan of Nev., Inc.*, 127 Nev. 789, 793 n.4, 263 P.3d 261, 264 n.4 (2011) ("Although Cervantes pleaded negligence and negligence per se in her complaint as separate causes of action, they are in reality only one cause of action. … We therefore do not consider Cervantes' theories of negligence separately."). The claim should be dismissed for this reason alone.

In addition, Plaintiffs fail to allege negligence per se. "A violation of statute establishes the duty and breach elements of negligence only if the injured party belongs to the *class* of persons that the statute was intended to protect, and the injury is of the *type* against which the statute was intended to protect." *Sagebrush Ltd. v. Carson City*, 99 Nev. 204, 208, 660 P.2d 1013, 1015 (1983); *see id.* ("Whether a legislative enactment provides a standard of conduct in the particular situation presented by the plaintiff is a question of statutory interpretation and construction for the court."). The Complaint alleges that Defendants violated *one* ordinance, Clark County Code of Ordinances,

Chapter 6.67 *et seq.* (Compl. ¶ 232.) That ordinance prescribes the licensing process for outdoor festivals: An applicant must submit a plan (§ 6.67.040), and the board of county commissioners "may establish conditions which must be met prior to the issuance of any license," which conditions are listed (§ 6.67.080).

No pleaded facts show that Defendants violated this ordinance, so the allegation is empty and groundless. To the contrary, the Complaint pleads that Defendants complied with the license requirement. The Complaint alleges that Defendants "were required to obtain an outdoor festival permit," "prepared a security plan," and became "permit holders." (Compl. ¶¶ 144-145.) The claim of negligence per se should be dismissed. *See Sanchez*, 125 Nev. at 828, 221 P.3d at 1283 (affirming dismissal of negligence per se claim).

***Nuisance.*** The nuisance claim also fails as a matter of law. Like a negligence claim, a nuisance claim requires proximate causation, and Plaintiffs fail to plead that it was Defendants, rather than Paddock, who caused their injuries. *See* N.R.S. § 40.140 (alleged nuisance must "interfere with the comfortable enjoyment of life or property"); Restatement (Second) of Torts § 822 ("[o]ne is subject to liability for a private nuisance if, but only if, his conduct is a *legal cause* of an invasion of another's interest in the private use and enjoyment of land …"). Moreover, the alleged nuisance—inadequate security measures—did not itself interfere with Plaintiffs' enjoyment.

In addition, Nevada courts have made clear that a nuisance action requires interfering with *real property. See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330, 130 P.3d 1280, 1288 (2006) ("common-law principles limit viable claims for private nuisance to substantial interferences with the use and enjoyment of real property"); Restatement (Second) of Torts § 821E (licensees cannot maintain claim). In *Coughlin v. Tailhook Ass'n, Inc.*, 818 F. Supp. 1366 (D. Nev. 1993), for example, the plaintiff was assaulted by fellow convention attendees and asserted a nuisance claim against the Las Vegas Hilton. The court dismissed the claim, holding that section 40.140, Nevada's private nuisance statute, "is an action concerning real property, and clearly is not implicated by the facts as alleged." *Id.* at 1372.

1

### D.   The Punitive-Damages Claim Fails as a Matter of Law

2       Finally, Plaintiffs' absurd claim for gross negligence and punitive damages fails as a matter

3  of law. (Compl. ¶¶ 281-293.) Nevada law allows punitive damages only if the defendant acted with

4  oppression, fraud, or malice—*i.e.*, if the defendant "intended to injure a person" or acted with "a

5  willful and deliberate failure to act to avoid" harm. N.R.S. §§ 42.001, 42.005; *see Countrywide*

6  *Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 743, 192 P.3d 243, 255 (2008) (requiring "conduct

7  that, at a minimum, must exceed mere recklessness or gross negligence").

8       A request for punitive damages against Defendants cannot be maintained in good faith: As

9  the Complaint shows, the only person who acted with malice—with intent to injure and with a

10  reckless disregard of the fatal consequences of his actions—was Stephen Paddock. His monstrous

11  conduct shocked Defendants, this community and the world. Plaintiffs' claim for punitive damages

12  against Defendants should be dismissed. *See Elliott v. Prescott Cos., LLC*, 2016 WL 2930701, at *2

13  (D. Nev. May 17, 2016) (dismissing punitive-damages claim because complaint did not "establish

14  that the defendants had knowledge of probable harmful consequences … and deliberately failed to

15  avoid them"); *Martin v. Collier*, 2011 WL 1628028, at *3 (D. Nev. Apr. 28, 2011) (dismissing

16  punitive-damages claim because "there are no allegations in the complaint establishing that

17  defendants acted with malice").

18  ## IV.   CONCLUSION

19       Plaintiffs' injuries were caused by the deliberately murderous conduct of Stephen Paddock.

20  As a matter of law, such conduct is not reasonably foreseeable, and it is the superseding and

21  predominate cause of Plaintiffs' injuries. Their claims against Defendants should be dismissed.

22  DATED:  June 29, 2018              PISANELLI BICE PLLC

23                                    By:   /s/ James J. Pisanelli
                                          JAMES J. PISANELLI, Bar No. 4027
24                                        TODD L. BICE, Bar No.  4534
                                          DEBRA L. SPINELLI, Bar No.  9695
25                                        400 South 7th Street
                                          Las Vegas, NV 89101
26
                                          *Attorneys for* MANDALAY BAY, LLC,
27                                        MANDALAY CORP., MANDALAY RESORT
                                          GROUP, MGM RESORTS FESTIVAL GROUNDS,
28                                        LLC, MGM RESORTS VENUE MANAGEMENT,
                                          LLC, and MGM RESORTS INTERNATIONAL

1

### CERTIFICATE OF SERVICE

2

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 29th

3

day of June, 2018, I caused to be e-filed/e-served through the Court's website true and correct copies

4

of the above and foregoing **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED**

5

**COMPLAINT** to all parties in accordance with the CM/ECF service list.

6

7

_____/s/ Kimberly Peets_____

8

An employee of Pisanelli Bice PLLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
No. 2:18-cv-01120-RFB-VCF