Mark P. Robinson, Jr., Esq.
California Bar No. 54426
(*Nevada pro hac pending*)
Daniel S. Robinson, Esq.
California Bar No. 244245
(*Nevada pro hac pending*)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
mrobinson@robinsonfirm.com

Robert T. Eglet, Esq.
Nevada Bar No. 3402
Robert M. Adams, Esq.
Nevada Bar No. 6551
Cassandra S.M. Cummings, Esq.
Nevada Bar No. 11944
**EGLET PRINCE**
400 S. Seventh St., Suite 400
Las Vegas, NV 89101
(702) 450-5400; Fax: (702) 450-5451
eservice@egletlaw.com

Kevin R. Boyle, Esq.
(*Nevada pro hac pending*)
California Bar No. 192718
Rahul Ravipudi, Esq.
Nevada Bar No. 14750
**PANISH SHEA & BOYLE LLP**
8816 Spanish Ridge Avenue
Las Vegas, NV 89148
(702) 560-5520; Fax: (702) 975-2515
boyle@psblaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RACHEL SHEPPARD an Individual; LOTUS HERRERA an Individual and as Special Administrator of the Estate of BRIAN FRASER, decedent; STEPHANIE FRASER as the Guardian Ad Litem for AUBREE FRASER, a minor; STEPHANIE FRASER as the Guardian Ad Litem for BRAYDEN FRASER, a minor; JOVANNA CALZADADILLAS an Individual; FRANCISCO CALZADILLAS an individual; NICHOLS ROBONE an Individual; ANTHONY ROBONE an Individual,<br><br>Plaintiffs,<br><br>v.<br><br>MANDALAY BAY, LLC, f/k/a MANDALAY COPRP., a Nevada Domestic Limited-Liability Company; et al.<br><br>Defendants | CASE NO. 2:18-cv-01120<br><br>**PLAINTIFFS' MOTION TO REMAND**<br><br>**Oral Argument Requested** |

- 1 -

MOTION FOR REMAND

**PLEASE TAKE NOTICE that** Plaintiffs, by and through undersigned counsel, hereby move this Court for an immediate remand of this action to the Eighth Judicial District Court for Clark County, Nevada. A hearing on Plaintiffs' Motion to Remand shall be conducted by the Court on _____, 2018, at _____ pm in or as soon thereafter as the matter may be heard in Courtroom _____ of the United States District Court, District of Nevada, located at _____ (unless the Court deems the matter appropriate for decision without oral argument.

Plaintiffs' Motion to Remand is based on the following grounds:

1. Removal is improper as Plaintiffs' complaint is based entirely on state law claims for relief;
2. The SAFETY Act does not apply to this case; and
3. Remand is appropriate because the removing parties cannot carry their burden of proof that removal is proper.

**RELIEF REQUESTED**

Plaintiffs seek a remand of this action to Nevada District Court, Clark County pursuant to 28 U.S.C. § 1447(c).

Dated: June __29th__, 2018

_____
Robert T. Eglet, Esq.
Robert M. Adams, Esq.
Cassandra S.M. Cummings, Esq.
**EGLET PRINCE**

Mark P. Robinson, Jr., Esq.
Daniel S. Robinson, Esq.
**ROBINSON CALCAGNIE, INC.**

Kevin R. Boyle, Esq.
Rahul Ravipudi, Esq.
**PANISH SHEA & BOYLE LLP**

*Attorneys for Plaintiff*

- 2 -

MOTION FOR REMAND

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case concerns the 1 October shooting at the Route 91 Festival (the "Shooting") that resulted in the deaths of fifty-eight (58) people and injured thousands more. Plaintiffs filed a complaint in the Eighth Judicial District Court for Clark County, Nevada alleging ten (10) state causes of action. The First Amended Complaint focuses on the negligence of the Defendants, particularly Mandalay Bay, in literally carrying the gunman's twenty-three (23) semi-automatic assault weapons to his hand-selected, complimentary suite over the course of the week leading up to the Shooting. Mandalay Bay's negligence permitted the gunman the space he needed to set up his weapons and prepare his attack on the Route 91 Festival.

In response to Plaintiffs' obvious state-court complaint, Defendants noticed removal based upon a little-known federal act that appears to never have been invoked in any prior case. Indeed, defense counsel admits in his declaration that this act was unknown to counsel until very recently.

Defendants seek the protections of a federal statute, the "SAFETY Act," that was not intended to protect Defendants or encompass allegations like those asserted by Plaintiffs. The SAFETY Act has never previously been invoked because it is an exceedingly narrow statute that applies only in very specific circumstances – none of which are the case here. The Act was a response to the terrorist attack of September 11, 2001, to encourage companies to get into the business of developing anti-terrorism technology. It was not designed to limit the liability of a hotel that, despite prior incidents, affirmatively assisted a gun man to shoot out of its window and people below. Defendants' reliance upon the SAFETY Act as grounds for removal of this case is unreasonable. In fact, Defendants do not have standing to seek removal under the SAFETY Act because they are not entitled to any of the Act's protections. As such, Plaintiffs respectfully request that this Honorable Court grant the instant Motion and remand this case to the Eighth Judicial District Court for Clark County, Nevada.

## II. FACTS

The facts underlying this case are well known so far as they relate to the events of October

1, 2017. Defendants' failures that resulted in the Shooting actually began in the week leading up to the Shooting.[1] The Shooter was a VIP guest of Mandalay Bay and, as such, his room charges were compensated by the hotel.[2] Six (6) days before the Shooting, the Shooter checked into a corner suite at Mandalay Bay that he had hand selected.[3] Three (3) days before the Shooting, he checked into the adjoining room.[4] Over the course of his stay, the Shooter was assisted to his room by the bell staff as he brought over twenty (20) bags containing firearms and other tools to carry out his attack.[5] The hotel staff even permitted the Shooter to use the service elevator to bring his bags and other equipment to his room.[6] The Shooter also used power tools to bolt a stairwell door closed, only permitted housekeeping to tend to his room if he was present, and left a "Do Not Disturb" sign on his room for over twelve (12) hours.[7] Despite all of the above, Mandalay Bay did not take any action to investigate the Shooter's actions over the course of his stay.

Approximately, an hour-and-a-half before the Shooting, a HotSOS alarm (indicating that a guest's room door was left ajar for a predetermined amount of time) was triggered on the 32nd floor where the Shooter was located.[8] Mandalay Bay security did not take any action to investigate the alarm for over an hour.[9] When security finally went to investigate the HotSOS alarm, the guard discovered that the stairwell entrance to the 32nd floor had been barricaded with an L-bracket.[10] At 10:00 p.m., the Shooter broke out the windows in his Mandalay Bay hotel rooms and began shooting at the Route 91 Festival across the street.[11] For approximately twenty (20) minutes, the Shooter used an arsenal of weapons firing hundreds of rounds at the Route 91 Festival without interruption, killing 58 guests, and injuring thousands of others.[12]

The operative First Amended Complaint was filed on June 4, 2018 against the following

---

[1] *See*, Plaintiffs' First Amended Complaint, attached as Exhibit "1."
[2] *Id.* at ¶ 45.
[3] *Id.* at ¶ 47.
[4] *Id.* at ¶ 48.
[5] *Id.* at ¶¶ 51-58.
[6] *Id.*
[7] *Id.*
[8] *Id.* at ¶ 63.
[9] *Id.*
[10] *Id.* at ¶ 65.
[11] *Id.* at ¶ 67.
[12] *Id.* at ¶ 69.

- 4 -

MOTION FOR REMAND

Defendants: Mandalay Bay, LLC fka Mandalay Corp.; Mandalay Resort Group; MGM Resorts Festival Grounds, LLC; MGM Resorts Venue Management, LLC; and MGM Resorts International. Plaintiffs allege ten (10) causes of action against Defendants based on state statutes and Nevada common law.[13] Defendants filed the Notice of Removal on June 22, 2018. There are no grounds on which this case should be removed to federal court, and as such, Plaintiffs respectfully request that the case be remanded to the Eighth Judicial District Court for Clark County, Nevada.

### III. ARGUMENT

If, after removal, it appears that the federal district court lacks subject matter jurisdiction, the plaintiff may move to remand the case back to the state court.[14] Here, Defendants removed this action based upon the perceived applicability of the SAFETY Act. The Act does not apply here, thus, Plaintiffs seek to remand this case to the Eighth Judicial District Court for Clark County, Nevada pursuant to 28 U.S.C. §1447(c).

Federal Courts must jealously guard their jurisdiction. *Olmos v. Residential Credit Sols., Inc.*, 92 F. Supp. 3d 954, 955 (C.D. Cal. 2015). This jealousy gets expressed in a lot of ways. Federal courts are particularly skeptical of cases removed from state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The strong presumption against removal jurisdiction means that defendants have the burden of establishing, by a preponderance of evidence, that removal is proper. *See id.* Courts "strictly construe the removal statute against removal jurisdiction," so "[f]ederal jurisdiction must be rejected if there is any doubt" about jurisdiction. *Id.*

Federal courts are courts of limited jurisdiction and jurisdictional requirements are strictly construed in favor of the states courts' retention of jurisdiction "because removal constitutes an infringement of state sovereignty." *Payne v. Bank of America, N.A.*, no. 3:09cv00080, 2010 WL 546770 (W.D. Va. Feb. 11, 2010) (citing *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005)). Congress has evidenced a clear intent "to restrict removal and to resolve all doubt about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manvilles Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).

---

[13] *See*, Exhibit "1."
[14] 28 U.S.C. §1447(c).

The party seeking removal has the burden of establishing federal jurisdiction, *Holcomb v. Bingham Toyota*, 871 F.2d 109, 110 (9th Cir.1989), and there is a "strong presumption against removal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir.2006).

Courts "strictly construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). A "strong presumption" exists against removal jurisdiction and "the defendant always has the burden of establishing that removal is proper." Id.

The United States District Court for the District of Nevada follows the jurisprudence set by the Supreme Court and Ninth Circuit as it relates to removal of state court actions. In Nevada, as with other federal jurisdictions, "[t]he removal statutes are construed restrictively, and any doubts about removability **are resolved in favor of remanding the case to state court**." *Greene v. Wyeth*, 344 F.Supp.2d 674, 678 (D. Nev. 2004)(emphasis added). There is a presumption against removal. *Wagner v. Amor 17 Corp.*, 321 F.Supp.2d 1195, 1201 (D. Nev. 2004). In the absence of diversity jurisdiction, removal under 28 U.S.C. §1441(a) is only proper if there is a federal question providing the federal courts with original jurisdiction as outlined in 28 U.S.C. §1331. *Id.* Determinations of federal jurisdiction require considerations of the "congressional intent, judicial power, and the federal system." *Id.* at 1202 (internal citation omitted). Accordingly, federal question jurisdiction is "continuously construed and limited in light of the history that produced it, the demands of reason and coherence, and the dictates of sound judicial policy." *Id.* (Internal citations omitted).

"[R]emand must be granted unless the defendant can show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant." *Gerber v. Bayer*, 2008 U.S. Dist. Lexis 12174 (Case No. 07-05918, N.D. Cal. 2008) see also *Levine v. Allmerica Financial Life Ins. & Annuity Co.*, 41 F. Supp. 2d 1077, 1078 (C.D. Cal. 1999).

///

///

///

## A. REMOVAL IS IMPROPER AS PLAINTIFFS ONLY ALLEGE STATE LAW CLAIMS FOR RELIEF

As stated *supra*, the Supreme Court has repeatedly "declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S.Ct. 1562, 1573 (2016). The federal court to which a case is removed must reject jurisdiction if there is any doubt as to whether the defendant had the right to remove the action. *Gaus*, 980 F.2d at 566. Federal courts have a long tradition of recognizing the independence of the state courts to determine the cases brought therein, which includes a "reluctance . . . to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes." *Merrill Lynch*, 136 S. Ct. at 1573 (quoting *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 379 (1959)).

The court's reluctance to expand the jurisdiction of the federal courts is even greater in cases involving exclusive federal jurisdiction. *Id.* This is especially true "when, as here, the construction offered would place in federal court actions bringing only claims created by state law – even if those claims might raise federal issues." *Id.* at 1573-1574. The fact that the complaint makes reference to a federal duty is not sufficient to support removal of a case asserting all state-law claims. *Id.* at 1574.

In *Merrill Lynch*, the Court conducted an analysis of whether Section 27 of the Exchange Act required removal because it granted district courts exclusive jurisdiction for "all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." *Id.* at 1567. The Court reasoned that the "brought to enforce" language in Section 27 carries the same meaning, and is subject to the same analysis, as statutes conferring exclusive jurisdiction for claims "arising under" the statutes. *Id.* at 1573. Thus, the Court applied the jurisdictional test for those cases "arising under" federal law as applied in cases removed under 28 U.S.C. §1331. *Id.* at 1569. There are two (2) scenarios in which a case "arises under" federal law:

> Most directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted. That set of cases is what [plaintiff] highlights in offering his view of §27. But even when a 'claim finds its origins' in state law, there is 'a special and small category of cases in which arising under jurisdiction still lies.' *Gunn v. Minton*, 568 U.S. ___, ___, 133 S.Ct. 1059, 185 L.ed.2d 72,

79 (2013) As this Court has explained, a federal court has jurisdiction of a state-law claim if it 'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of federal and state power. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) . . . That description typically fits cases, like those described just above, in which a state-law cause of action is 'brought to enforce' a duty created by the Exchange Act because the **claim's very success depends on giving effect to a federal requirement**. *Id.* at 1569-1570 (emphasis added).

Based on the foregoing, even where a federal statute calls for exclusive jurisdiction, the defendant, on removal, must demonstrate that the complaint arises under the federal law either because it explicitly states claims under federal law or because the plaintiff cannot prove his or her claims without proving a violation of federal law. In removal cases invoking federal question jurisdiction pursuant to 28 U.S.C. §1331 (conferring original jurisdiction on federal district courts for "all civil actions arising under the Constitution, laws, or treaties of the United States"), the Courts apply the "well-pleaded complaint rule," which provides that a federal court has jurisdiction only where a federal question is "presented on the face of the plaintiff's properly pleaded complaint." *See*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

In some instances a complaint reliant upon state law may still be removable for federal question jurisdiction pursuant to 28 U.S.C. §1331 due to the application of the substantial federal question doctrine. *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005). However, in such a case, defendants must establish two (2) elements to remove an action under the substantial federal question doctrine: "(1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." *Id.* (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 1996)). If resolution of a well-pleaded state claim depends upon the resolution of an issue of federal law, removal would be proper. *Id.* The substantial federal question doctrine does not apply if the plaintiff can establish his state law claims without resolving an issue of federal law. *Id.*

The jurisprudence regarding removal supports the well-founded principle that plaintiffs control their claims and, thus, may avoid federal jurisdiction by relying entirely upon state law in their complaints. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, Plaintiffs' First Amended Complaint alleges the following ten (10) claims for relief against Defendants:

1. Negligence;
2. Negligence against MGM Resorts International;
3. Loss of Consortium;
4. Wrongful Death;
5. Premises Liability;
6. Negligent Infliction of Emotional Distress;
7. Negligence Per Se, based on alleged violations of applicable Clark County Ordinances;
8. Nuisance;
9. Negligent Hiring, Retention, and Supervision; and
10. Gross Negligence: Punitive Damages.[15]

Each of Plaintiffs' claims for relief are based entirely on state law. Plaintiffs have not alleged any claims for relief arising out of federal law. None of Plaintiffs' claims for relief require Plaintiffs to prove a violation of the SAFETY Act. The requisite strict construction of the removal statute and the SAFETY Act, compels a conclusion that removal is improper in this action. Simply put, Defendants cannot meet the threshold requirement that removal is proper under 28 U.S.C. §1441(a), and thus, remand is necessary.

### B. THE SAFETY ACT DOES NOT APPLY

The SAFETY Act permits a federal cause of action "for claims arising out of, relating to, or resulting from an act of terrorism when qualified anti-terrorism technologies have been deployed in defense against or response or recovery from such act and such claims result or may result in loss to the Seller." 6 USC §442(a)(1). However, a review of the SAFETY Act shows that it is not applicable to the case at bar, because: (1) there has been no finding that the 1 October shooting was an "act of terrorism," (2) Plaintiffs have made no claims against Contemporary Services Corporation ("CSC"), who, according to defendants allegations, is the qualified Seller under the Act involved in this event; (3) Defendants are not qualified Sellers, and as such has no standing for removal; and (4) Defendants were the proximate cause of Plaintiffs' injuries.

---

[15] See, First Amended Complaint, attached as Exhibit "1."

Evaluating the meaning of the SAFETY Act begins with a review of the plain language. *See*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). As such, the first step is determining "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* The inquiry into a statute's meaning need not continue once the Court makes the determination that it is clear and unambiguous. *Id.*

**1. The Act does not apply because there has been no official finding that this was "an act of terrorism"**

As a threshold matter, the SAFETY Act does not apply because the Secretary of Homeland Security has not officially declared Shooter's actions an "act of terrorism." For purposes of the SAFETY Act, an act is considered an "act of terrorism" only if the ***Secretary [of Homeland Security] determines*** that the act (i) is unlawful; (ii) causes harm to a person, property, or entity in the United States; and (iii) uses or attempts to use instrumentalities, weapons or other methods designed or intended to cause mass destruction, injury or other loss to citizens or institutions of the United States. *See* 6 U.S.C. § 442(2)(A)-(B), 6 C.F.R. §25.2, and 48 C.F.R. § 50.201. The Secretary's power to declare an act an "act of terrorism" under the SAFETY Act is non-delegable.[16] As such, aside from the Secretary of Homeland Security, no one, including this Court, has authority to make such a determination. Because there has never been an official finding that the Shooting was an "act of terrorism," the SAFETY Act does not apply.

Despite there having been no official declaration of the 1 October shooting as an act of terrorism, Defendants make a stretch and point to four (4) sources in support of its argument that the Secretary and Department of Homeland Security ("DHS")[17] have made such a determination. These sources include: (1) Congressional Testimony of Acting Secretary of DHS, November 30, 2017;[18]

---

[16] *See* 6 C.F.R. §25.3 "All of the Secretary's responsibilities, powers, and functions under the SAFETY Act, except the authority to declare that an act is an Act of Terrorism for purposes of section 865(2) of the SAFETY Act, may be exercised by the Under Secretary for Science and Technology of the Department of Homeland Security or the Under Secretary's designees." *See also* Regulations Implementing the Support Anti-Terrorism by Fostering Effective Technologies Act of 2002 (the SAFETY Act), 71 F.R. 33147.

[17] As stated above, the Secretary has sole power to declare an act an "act of terrorism" for purposes of the SAFETY Act. To the extent that Defendants argue that other DHS officials have power to make an official finding, they are simply not correct.

[18] https://www.dhs.gov/news/2017/11/30/written-testimony-dhs-acting-secretary-elaine-duke-house-committee-homeland-security (distinguishing between "terrorists and other violent criminals" and noting that both terrorists and other violent criminals are placing significant emphasis on attacking soft targets (*e.g.*, sports venues, shopping venues,

(2) Department of Homeland Security, Soft Targets and Crowded Places Security Plan Overview, May 2018;[19] (3) Congressional Testimony of Secretary of DHS, May 15, 2018;[20] and (4) June 4, 2018 DHS announcement regarding the development of a ST-CP Security Enhancement and Coordination Plan.[21] *See* Dkt. 1 at p. 3. Relying solely on four (4) sources, three (3) of which do not even mention the Shooting and none of which contain a determination by the Secretary that the Shooting was in fact an "act of terrorism," Defendants would have this Court believe that any attack on a soft target or crowded place constitutes an "act of terrorism" such that the SAFETY Act applies. This is simply not true and no court has ever so held. Moreover, Defendants admit, by declaration of its counsel, that CSC only recently began the process of obtaining a statement certifying the Shooting as an "act of terrorism."[22] Simply put, unless and until the Secretary of Homeland Security makes an official finding that the Shooting was an "act of terrorism," any argument by Defendants that the SAFETY Act applies in this case is not only premature, but also lacks merit.[23]

### 2. Plaintiffs Have Not Made Claims Against CSC

The SAFETY Act creates an exclusive "[f]ederal cause of action [that] shall be brought only for claims for injuries that are proximately caused by **Sellers** that provide qualified anti-terrorism technology [QATT] to…customers."[24] A "Seller" for purposes of the SAFETY Act is the "person or entity that sells or otherwise provides a qualified anti-terrorism technology to . . . customers."[25] In this case, CSC is the only entity potentially entitled to protection under the SAFETY Act.[26]

---

schools, and transportation systems), such as those seen in "recent *tragedies* in Nevada [the October 1, 2017 Shooting], New York [the October 31, 2017 attack in which eight people were run over by a driver inspired by the terrorist group ISIS], and Texas [the November 5, 2017 shooting in which a gunman opened fire in a rural Texas church].

[19] https://www.dhs.gov/sites/default/files/publications/DHS-Soft-Target-Crowded-Place-Security-Plan-Overview-052018-508_0.pdf. Although comprehensive in nature, the publication acknowledges that soft targets and crowded places are targeted by several types of bad actors, including foreign terrorist organizations, foreign fighters, and other threat actors, such as domestic criminals and lone actors. There is no mention of Shooter or the Shooting.

[20] https://www.dhs.gov/news/2018/05/15/written-testimony-dhs-secretary-nielsen-senate-committee-homeland-security-and. This Testimony does not mention Shooter, the Shooting, or the SAFETY Act.

[21] https://www.dhs.gov/publication/securing-soft-targets-and-crowded-spaces. Again, this Publication does not mention Shooter, the Shooting, or the SAFETY Act.

[22] *See*, Declaration of Michael R. Doyen, Doc. 1-15 on file herein, at ¶ 4.

[23] Even if the Shooting is certified by DHS as an "act of terrorism," Plaintiffs maintain that the SAFETY Act does not apply to this case for the reasons stated throughout this Motion to Remand.

[24] 6 U.S.C. §442 (a)(1) (emphasis added).

[25] 6 U.S.C. §443(a)(1); *see also*, 6 C.F.R. §25.2.

[26] Plaintiffs acknowledge that DHS issued a Certificate of Conformance to CSC for its Event Security Services in accordance with the SAFETY Act, on April 20, 2017. However, as discussed above, Plaintiffs have not asserted any claims against CSC.

However, Plaintiffs have not asserted any claims against CSC nor have they alleged that the performance or non-performance of CSC's QATTs proximately caused their injuries. The named Defendants in this action are Mandalay Bay, LLC fka Mandalay Corp., Mandalay Resort Group, MGM Resorts Festival Grounds, LLC, MGM Resorts Venue Management, LLC, and MGM Resorts International.[27] CSC is neither named as a defendant, nor is it referenced anywhere in Plaintiffs' First Amended Complaint.

Congress has made it clear that the Seller [CSC] is the only appropriate defendant in an action alleging a violation of the SAFETY Act.[28] The Code of Federal Regulations specifically states that a cause of action for the failure of a QATT system "may not be brought against the buyers, buyers' contractors, downstream users of the [QATT], the Seller's suppliers or contractors, or any other person or entity."[29] Looking to the Congressional Record dated November 19, 2002, Senator Hatch made a clear statement regarding the purpose of the SAFETY Act, "[to] facilitate the development and deployment of needed technologies, the House included its SAFETY Act provision, recognizing that we cannot saddle manufacturers with unreasonable exposure to unlimited lawsuits."[30] There can be [o]nly one cause of action . . . for . . . personal injury, or death for

---

[27] See, Exhibit "1."

[28] See 6 C.F.R. §25.7(d) ("There shall exist only one cause of action for...person injury, or death for performance or non-performance of the Seller's Qualified Anti-Terrorism Technology in relation to an Act of Terrorism. Such cause of action may be brought only against the Seller of the Qualified Anti-Terrorism Technology and may not be brought against the buyers, the buyers' contractors, or downstream users of the Technology, the Seller's suppliers or contractors, or any other person or entity." See also Regulations Implementing the Support Anti-Terrorism by Fostering Effective Technologies Act of 2002 (the SAFETY Act), 71 F.R. 33147 (noting that a Seller is the only appropriate defendant in a claim brought under the SAFETY Act and explaining that if this were not the case, a would-be-plaintiff could, in an effort to circumvent the statute, bring claims (arising out of or relating to the performance or non-performance of the Seller's Qualified Anti-Terrorism Technology) against arguably less culpable persons or entities, including but not limited to contractors, subcontractors, suppliers, vendors, and customers of the Seller of the technology, which would in turn lead those persons or entities to file a third-party action against the Seller. As discussed in greater detail below, Plaintiffs have not alleged that the performance or non-performance of CSC's QATTs proximately caused their injuries. Therefore, any argument that Plaintiffs are attempting to circumvent the statute by bringing claims against Defendants as opposed to CSC fails.

[29] Id.

[30] 148 Cong. Rec. S11367 (2002) (statement of Sen. Orrin Hatch). Plaintiffs maintain that the language of the SAFETY Act is clear and it is not necessary to look beyond the plain language to determine its meaning and application, but provide this statement from the Congressional record of further support for the clear and unambiguous meaning of the SAFETY Act.

performance or non-performance of the" QATT and the only appropriate defendant in that cause of action is the Seller.[31]

There is no question that the SAFETY Act only applies to claims against a Seller for personal injuries or deaths caused by the performance or non-performance of the QATT at issue. Since Plaintiffs have not asserted any claims against CSC, who is the only entity that would possibly qualify as a Seller, the SAFETY Act does not apply to this case.

### 3. Defendants Have no Standing for Removal Since It is Not a "Seller" of Qualified Anti-Terrorism Technology

Defendants are not entitled to protection under the SAFETY Act because it is not a "Seller" of qualified anti-terrorism technology.[32] A "Seller" is any person, firm, or other entity that sells or otherwise provides Qualified Anti-Terrorism Technology to any customer(s) and to whom or to which (as appropriate) a Designation and/or Certification has been issued under this Part."[33] Here, unlike CSC, Defendants are not Sellers because they do not sell or provide QATTs to customers. Further, Defendants have not received a Designation or Certification from the DHS under the SAFETY Act. Therefore, because Defendants are not Sellers, they do not have standing for removal.

Moreover, Defendants are not intended beneficiaries of the limitations and protections contained within the SAFETY Act. In the context of contractual relations, a party may be a third-party beneficiary to a contract if the "contract reflects the express or implied intention of the parties to benefit the third-party." *Rogers v. United States Army*, 2007 U.S. Dist. LEXIS 30056, *36 (S.D. Tex. April 23, 2007) (citing *State of Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997). The "intent-to-benefit" is generally determined upon review of the contractual relationship and consideration of "whether the beneficiary would be reasonable in relying on the promise as intending to confer a right on him." *Id.* at *37. Contract law requires clear language in the contract that the parties thereto intended to confer a benefit on a third-party. *InterGen N.V. v. Grina*, 344 F.3d

---

[31] Regulations Implementing the Support Anti-terrorism by Fostering Effective Technologies Act of 2002 (the SAFETY Act), 71 Fed. Reg. 110 (June 8, 2006), 33150.
[32] Notably, Defendants have not taken the position that it is a Seller for purposes of the SAFETY Act. However, out of an abundance of caution, Plaintiffs have addressed this argument as further support of their argument that this case should be remanded to state court.
[33] 6 C.F.R. §25.2.

134, 146 (1st Cir. 2003). A contract that specifically outlines the parties thereto and their rights without mention of any rights conferred on a third-party cannot later be found to benefit a third party. *Id.*

It is reasonable to apply a similar analysis of examining the clear language when determining who is entitled to protections under any statute, including the SAFETY Act. If a company happens to receive the benefit of a QATT product or system, it is not immediately entitled to the protections afforded under the Act. There is no evidence here that Defendants relied upon any protections of the SAFETY Act in allowing CSC to provide security at the Route 91 Festival or that Defendants had anything to do with the decision to utilize CSC's services. In fact, the Declaration submitted in support of the Notice of Removal indicates that Defendants were not aware of the SAFETY Act or its protections until after it was served with the First Amended Complaint.[34]

Defendants' attempts to avail themselves of the protections of the SAFETY Act is not supported by the language of the SAFETY Act or under the law of statutory construction. Thus, remand to State Court is appropriate.

### 4. Neither CSC nor the QATT System were the Proximate Cause of the Shooting

Pursuant to the SAFETY Act, a cause of action "shall be brought only for claims for injuries that are **proximately caused by sellers** that provide qualified anti-terrorism technology to Federal and non-Federal government customers."[35] Black's Law Dictionary defines proximate cause as follows: "1. A cause that is legally sufficient to result in liability. 2. A cause that directly produces an event and without which the event would not have occurred."[36] As set forth in Plaintiffs' First Amended Complaint, the failures of the security within the Mandalay Bay Resort was the proximate cause of the shooting event.[37] Stated another way, but for the failures of the Mandalay Bay Resort security, the Shooter would not have been able to carry out his attack and Plaintiffs would not have suffered any injuries. The actions, or inactions, of CSC have no impact on whether the shooting occurred. As such, Plaintiffs have not alleged that the performance or non-performance of CSC's

---

[34] *See*, Declaration of Michael R. Doyen, Document 1-15, at ¶¶ 4-8.
[35] 6 U.S.C. §442(a)(1)(emphasis added).
[36] *Proximate Cause*, Black's Law Dictionary (8th ed. 2006).
[37] *See*, Exhibit "1."

Qualified Anti-Terrorism Technology caused the shooting that caused Plaintiffs' injuries. Once again, the plain language of the SAFETY Act shows that it does not apply.

The only circumstance in which the SAFETY Act may apply is if Plaintiffs had asserted claims against CSC or, alternatively, if Plaintiffs had alleged that their injuries were proximately caused by the performance or non-performance of CSC's Qualified Anti-Terrorism Technology (QATTs). Here, Plaintiffs have enumerated numerous acts and omissions by Defendants, which proximately caused Plaintiffs' injuries. However, Plaintiffs have <u>not</u> alleged that CSC played any role in causing the Shooting because CSC did not provide any security services within the Mandalay Bay Resort. Additionally, Plaintiffs have not alleged that CSC's acts or omissions proximately caused their injuries. Further, Plaintiffs have not alleged that the performance or non-performance of CSC's QATTs proximately caused their injuries. As such, the SAFETY Act does not apply to this case.

### C. DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROOF

In the Ninth Circuit, "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). In order to meet that burden, Defendants must produce admissible evidence. A removing party "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type' evidence relevant to the" issue on removal. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2014) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Importantly, "a defendant cannot establish removal jurisdiction by **mere speculation and conjecture, with unreasonable assumptions**." *Id.* (emphasis added).

Here, the only evidence submitted by Defendants in support of their Notice of Removal is the Declaration of Michael R. Doyen, an attorney representing Defendants in this matter, which fails to meet any applicable standard to support removal in this case.[38] Defendants' purpose for submitting the Declaration appears to be to authenticate the Certificate of Conformance issued by the Department of Homeland Security to CSC, attached as Exhibit A thereto.[39] Mr. Doyen does not have

---

[38] *See*, Doc. 1-15.
[39] *Id.*

MOTION FOR REMAND

personal knowledge regarding CSC's certification from DHS, as he only received the certificate after learning that CSC was allegedly seeking to have the Shooting deemed an "act of terrorism."[40]

Neither the Notice of Removal nor the Declaration provide any evidence that Defendants (or any identified person or entity) contracted with a certified QATT Seller. In fact, the Notice of Removal appears to deliberately omit the identity of the party that allegedly retained CSC to provide security for the Route 91 Festival.[41] Defendants simply state, "CSC was retained as the 'Security Vendor' for the Route 91 Harvest Festival, and provided the security personnel for the concert."[42] The Declaration is silent as to the identity of the entity that allegedly retained CSC.[43]

Moreover, Defendants have not provided any evidence that the services for which CSC may have been certified were actually deployed at the Route 91 Festival. Instead, Defendants assume that the unidentified entity that retained CSC did so with the intent that CSC would deploy the QATT for which it may have been certified.[44] Once again, the Declaration of Michael R. Doyen is silent as to whether CSC's QATT was deployed at the Route 91 Festival.

Also, Defendants have not attached the contract between CSC and the unnamed entity who allegedly entered the contract with them. The terms of that contract would be crucial to even a beginning analysis of the potential applicability of the SAFETY Act.

As set forth *supra*, the 1 October Shooting has not been designated an "act of terrorism." Defendants do not have the authority to make such a designation and cannot simply deem something an "act of terrorism" because Defendants believe they fit that definition. There is a procedure in place for designating an "act of terrorism." The authority to do so rests with the Department of Homeland Security. Without evidence that the Shooting was an "act of terrorism," the SAFETY Act does not apply.

Finally, Defendants' Declaration in support of their removal contains counsel's conclusory statements and assumptions regarding the application of the SAFETY Act. Mr. Doyen states that

---

[40] *Id.* at ¶ 4.
[41] *See*, Notice of Removal by Defendants, Doc. 1, at ¶ 11.
[42] *Id.*
[43] *See*, Doc. 1-15.
[44] *See*, Notice of Removal by Defendants, Doc. 1, at ¶11.

- 16 -

MOTION FOR REMAND

there has not been litigation under the SAFETY Act and that "no one has previously sought a public statement from the Secretary of Homeland Security that a particular event meets the requirements of the SAFETY Act."[45] His Declaration goes on to allege that the Shooting "appears to have been the first act of mass violence at an event at which a DHS Certified service or technology was employed."[46] Lastly, the Declaration includes counsel's conclusion, after he conducted his "over the past week," that the Shooting meets the requirements of the SAFETY Act.[47]

As set forth herein, there are multiple reasons why the SAFETY Act does not apply to this case. Defendants have failed to provide any admissible evidence that would support removal of this action under the SAFETY Act. The assumptions and conclusions of counsel for Defendants do not satisfy Defendants' burden of proof that is required to properly remove this case to Federal Court. Accordingly, removal is improper and remand is necessary.

## IV. CONCLUSION

Plaintiffs respectfully requests that this Court find that the SAFETY Act has no applicability here, and grants Plaintiffs' Motion for Remand.

Dated: June 29TH, 2018

Robert T. Eglet, Esq.
Robert M. Adams, Esq.
Cassandra S.M. Cummings, Esq.
**EGLET PRINCE**

Mark P. Robinson, Jr., Esq.
Daniel S. Robinson, Esq.
**ROBINSON CALCAGNIE, INC.**

Kevin R. Boyle, Esq.
Rahul Ravipudi, Esq.
**PANISH SHEA & BOYLE LLP**

*Attorneys for Plaintiff*

---

[45] *See*, Doc. 1-15, at ¶ 7.
[46] *Id.*
[47] *Id.*

- 17 -

MOTION FOR REMAND

# CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b), I hereby certify that I am an employee of EGLET PRINCE, and on the **29**th day of June, 2017, I did cause a true and correct copy of the foregoing document **PLAINTIFFS' MOTION TO REMAND** to be filed and served electronically via the Court's CM/ECF system.

_____
An employee of EGLET PRINCE